# HOFFMAN *a.* ÆTNA FIRE INSURANCE COMPANY.

*New York Superior Court; General Term, December,* 1863.

INSURANCE.—PARTIES.—PROOFS OF LOSS.—MEASURE OF DAMAGES.—CHARGE.—CASE AND EXCEPTIONS.

A policy of insurance issued to partners which contains a clause declaring it void in case of a sale of the property insured, without the consent of the insurers, is not annulled by a sale or release by one partner of all his interest to the others. (BARBOUR, J., dissented.)

The cases of Tillou *a.* Kingston Mut. Ins. Co. (7 *Barb.*, 70), and Wilson *a.* Genesee Mut. Ins. Co. (16 *Ib.*, 511), as to this point, approved.

Upon a loss after such release, the partners to whom the release was given can recover, in their own names, the whole loss under the policy, including not only the interest released, but also any loss to goods bought by them after the release.*

Where a policy declares that the value of the property shall be deemed what it may cost at the time of the fire to replace it, and also requires the preliminary proofs to state the actual cost of the articles, the insured are not bound by their statement of the actual cost from claiming that the value was a greater sum.

If the goods were those which the insured dealt in at wholesale or manufactured, the price for which similar goods were generally sold by wholesale dealers or manufacturers may be considered by the jury in estimating such value.

The failure of the insured to specify any of the goods with particularity, in their proofs of loss, if caused by their inability to do so in consequence of the total destruction thereof, does not preclude them from recovering for such goods.

The usual clause in a policy, that upon the happening of a fire the insured shall use all reasonable means for the protection of the property, &c., does not bind them to use any means to restore it to its previous condition, but only to take the necessary steps to prevent its deterioration and place it in a condition to be examined.

Thus where a large part of the goods were shirts, bosoms, and collars, most of which were injured only by water or by handling,—*Held*, that the insured were not bound to have them relaundried.

An erroneous assumption by the judge in charging the jury, that there is no controversy upon a particular matter of fact, is to be corrected, not by an exception, but by calling his attention to it that he may then correct it.

---

* Upon an appeal to the Court of Appeals from the decision above reported, that court affirmed this decision, discussing at length, in the opinion delivered, the two points of law first above stated; and as to the remaining exceptions, approving the opinion of ROBERTSON, J., 32 *N. Y.*, 405.

The practice of including in a case questions withdrawn, answers excluded without objection, and testimony not necessary to raise the questions on the exceptions, or stated in too voluminous a form, reprehended by the court.

Appeal by the defendants from a judgment on a verdict recovered by the plaintiffs.

The action was brought by George Hoffman and William Place to recover on a policy of fire insurance issued by the defendants.

The policy was issued in February, 1861, to the firm of Hoffman, Place & Co., a partnership then existing, composed of the plaintiffs and one Silvernail. The latter withdrew from the business in March, 1862, and then released his interest in the partnership property to the plaintiff Hoffman, who, with Place, continued the business, which was that of manufacturers of, and wholesale dealers in, gentlemen's furnishing goods, under the firm-name of Hoffman & Place. Subsequently to this change in the partnership, the loss occurred.

The policy expressed that the defendants insured "Hoffman, Place & Co. against loss or damage by fire to the amount of six thousand dollars, on merchandise hazardous and not hazardous, their own, or held by them in trust or on commission, or sold but not delivered," contained in their store in the city of New York.

"And the said company do hereby promise and agree to make good unto the said insured, their executors, administrators, and assigns, all such loss or damage, not exceeding in amount the sum insured, as shall happen by fire to the property as above specified, during the term of one year," . . . "the said loss or damage to be estimated according to the actual cash value of the said property at the time the same shall happen." . . . "*Provided,* that" . . . "if the said property shall be sold or conveyed, or if this policy shall be assigned without the consent of the company, obtained in writing hereon," . . . "this policy shall be null and void."

The conditions annexed contained, among others, the following usual provisions :

"VIII. In case of fire, or exposure to loss or damage thereby, the insured shall use their best endeavors to save and

protect the property, and the company shall not be liable for any loss sustained in consequence of neglect to do so . . . . "

" When merchandise or other personal property is partially damaged, the insured shall forthwith cause it to be put in as good order as the nature of the case will admit, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged ; and shall cause an inventory to be made and furnished to the company of the whole, naming the quantity and cost of each. . . . "

" IX. Persons sustaining loss or damage by fire, shall forthwith give notice thereof, in writing, to the company, and, as soon after as possible, they shall deliver as particular an account of the loss and damage as the nature of the case will admit, signed with their own hands. . . . . "

" The cash value of property destroyed or damaged by fire shall be deemed to be such as it may cost at the time of the fire to replace the same."

The proofs of loss submitted by the plaintiffs to the defendants, after the fire, referred to a schedule annexed, exhibiting the merchandise partially damaged. This schedule contained two prices, affixed to each item, in separate columns, one headed " *cost,*" and the other headed " *cash value.*" The prices in the second column exceeded those in the former. The plaintiff claimed to be indemnified according to the latter value. In addition this statement of goods damaged, the proofs of loss contained a claim for goods lost and destroyed, which was made in the following terms :

" There was also lost, and destroyed by the fire, and in removing the said merchandise from the building, at the time of the fire, merchandise belonging to the undersigned, so far as can be ascertained, of about the value of $1,307.66."

The cause came on for trial on the 16th of February, 1863, before Mr. Justice MONELL and a jury.

At the close of the evidence, the defendant's counsel requested the court to instruct the jury as follows :

1. That the sale to Hoffman by Silvernail of his entire interest in the copartnership property, before the fire, without the knowledge or consent to the defendants, rendered the policy void ; and that the plaintiffs cannot recover.

2. That, should it be held that the sale of Silvernail's in-

terest to Hoffman did not render the policy void, then Hoffman & Place can recover only to the extent of their original interest in the property of Hoffman, Place & Co., and not on account of any portion of the interest of Silvernail conveyed to Hoffman.

4. That the plaintiffs cannot recover in this action on account of the loss or injury to any goods or property purchased or acquired by them subsequent to the dissolution of the firm of Hoffman, Place & Co., and the sale of Silvernail's interest to Hoffman.

7. That the plaintiffs having stated the costs of the goods in the preliminary proofs of loss, are bound thereby, and cannot now claim that they cost any greater or higher amount.

These requests the court refused, and the defendants excepted.

8. That the plaintiffs cannot, in any event, recover for damage or injury to any goods, other than those set forth in the schedule attached to, and forming a part of, the proofs of loss, *except such as, from their total destruction, they could not specify with more particularity than they have done.*

The court charged thus as added to, and amended by, the words in italics. The defendants excepted to the amendment.

9. That if, at or about the time of the fire, it would have cost the plaintiffs the several sums mentioned in the proofs of loss to manufacture or procure the goods therein named, then the amount of the loss may be determined by deducting from the cost amount specified in the proofs of loss, the amount of the value of the goods in their damaged condition after the fire.

10. That the price for which goods similar to the stock in question were generally sold by, or purchased from, wholesale dealers and manufacturers, cannot be taken by the jury as the basis from which the cost to replace those goods can be calculated.

11. That the proofs of loss in reference to the sum of $1,307.66 are insufficient, and are not in compliance with the 9th condition of insurance; and that, as to that sum, the plaintiffs are not entitled to recover.

12. That the sale of Silvernail's interest to Hoffman, and his withdrawal from the firm, was a dissolution of it · and that,

therefore, any goods purchased by them, and added to the stock, are not covered by this policy.

These several requests the court refused, and the defendants excepted.

13. That the jury, in determining the amount of the loss, cannot take into consideration, or allow for, loss of business or trade, resulting from the happening of the fire, nor for loss of profits which, in the regular course of their business, the plaintiffs might have made upon their stock of goods, had it not been injured by the fire—*over and above the cash value thereof at the time.*

The court charged thus, with the addition of the words in italics. The defendants excepted to the modification.

The court also instructed the jury as follows:

" Where property has been totally destroyed, it is very difficult, if, indeed, it is not impossible, to furnish a particular description of the articles so destroyed; especially in cases where the books and papers of the establishment are lost also. Although the law requires a compliance with the condition contained in the policy of insurance, yet the only obligation in that respect which it imposes is, that the party insured shall furnish the best preliminary proofs in his power; and he is not required to do more than that. It will be for you to say, whether or not sufficient evidence has been given here to satisfy you of the actual loss of that portion of the property. So far as the preliminary proofs are concerned, that being a question of law, I state to you that the objection raised by the defendants upon that point is unavailable here; the preliminary proofs being sufficient to satisfy the conditions of the policy of insurance.

In furnishing their preliminary proofs, the plaintiffs gave both the cost or manufacturing price of their goods, and also the market value. Those distinct values were given in different columns in the same inventory. You will perceive that one of the conditions of the policy requires that the holders of the policy are to give the cost price of their property, and provides that after that is furnished the insurers and the insured are to ascertain its cash value; and therefore the plaintiffs, in giving those two columns, did nothing more than they were required to do by the conditions of the policy.

The only question of law which it is necessary for me to state to you relates to the rule of damages. I admitted testimony as to both the market value of the property in question, and the cost of its manufacture. I did so for the reason that at the time there was some doubt in my mind as to the correct rule of damages in this case; but a little reflection has satisfied me upon that point.

It is claimed, on the part of the defendants, that you are to take the cost of manufacturing the property as the basis of your calculation. I do not think that is the correct rule. You are to take, as the basis of your calculation of damages, the market value of the property at or about the 9th of April, 1862, the time of the happening of the fire. The reasonableness of this rule is obvious. There are a great many elements entering into the manufacture of goods, such as the species of labor employed and its value, the peculiar cunning in the art which one person possesses over another, the changes in the market of the price of the original material—these and other elements enter into the manufacture of different kinds of goods. If you are to take the cost price of manufacturing goods of the character of those involved in this case as your standard, you necessarily have to wait until the articles are manufactured; and according to the testimony of Mr. Hyatt, a very intelligent witness, it would take three months to manufacture them, during which time there would probably be a great change in their market value. Indemnity means making good. The insurers undertake by a policy of insurance, for a sufficient consideration, to make the insured good for any loss or damage by fire that may happen to the property upon which the policy is issued. The law makes general rules, and does not deal in exceptional cases; and the only safe rule in a case of this kind is to hold the insurance company to their contract of indemnity to make good to the insured the loss suffered at the time of the fire. If you take the market value, or, in other words, what it would have cost the plaintiffs at that time to go into the market and purchase the same kinds and quantity of goods as those which they lost, you have a basis upon which you can make your calculation of the damage sustained by the insured in this case.

I allowed evidence to be given of the cost of relaundrying

the goods injured by the fire; but the plaintiffs were not bound to relaundry the goods at all. They had a right, upon the happening of the fire, to claim the damages they had sustained by it; and the condition of the policy which provides that upon the happening of a fire the insured shall use all reasonable means for the protection of the property, does not mean that they shall apply any labor to the property more than is necessary in assorting and arranging the goods, that an examination may be made to ascertain the damage done to them. If relaundrying were a matter to be taken into consideration by you, you would have to wait and see what effect it would have upon the goods before you could fix the damage, and that could only be determined by the sale of the property afterwards. You have simply to take the market value of the property as the basis of your calculation.

To each of these paragraphs, the defendant's counsel excepted.

The jury rendered a verdict in favor of the plaintiffs for $4,075.87, upon which judgment was entered; and the defendants appealed.

*A. Wakeman,* for defendants, appellants:—I. The judge erred in refusing to charge as first requested. That the sale to Hoffman by Silvernail of his entire interest in the partnership property before the fire, without the knowledge of the defendants, avoided the policy.

1. The defendants, by the policy, insured Hoffman, Place & Co. against loss or damage by fire, on merchandise, their own, or held by them in trust—that is, property of this firm or association, having in law a distinct existence as a single being, known and referred to by the name of Hoffman, Place & Co.

2. The sale by Silvernail of his interest to Hoffman operated as a dissolution of the firm; and from that moment the existence of this distinct, single legal being, known by the name of Hoffman, Place & Co., was annihilated.

3. Thereupon George Hoffman and William Place, by contract under the law, created a new, separate legal being, with entirely other and very different rights, known by the name of Hoffman & Place.

But these defendants never insured the property of this new

legal being or firm; they never contracted with it, nor even knew of its existence until after the fire. But this new legal being or firm having purchased the property of the old firm, now seeks in its own right to enforce this contract against these defendants. This we insist they cannot do. Suppose H., P., and S. had been incorporated under the name of H., P. & Co., and these defendants had by that name insured its property as such, and subsequently G. H. and W. P. should have been incorporated by the name of H. & P., and should then purchase the property of the former corporation, without these defendants' knowledge, and a loss should occur, will it be contended that the latter corporation could recover upon the policy issued to the former? Certainly not. Now, we submit, upon the same principle, one firm cannot recover upon a policy issued to another, except under a recognized assignment.

4. But if Hoffman, Place & Silvernail were simply joint contractors with these defendants, then the sale of Silvernail to Hoffman was a termination of his rights and interests in the property. Of course, he could not be damaged by the fire. The sale operated as a release of the defendants from any interest or rights he may have had under the contract. A release of one in a joint contract is a release of all. (Murdock a. Mutual Ins. Co., 2 Comst., 210, 216, 218.)

5. The policy expressly provides that if the property should be "sold or conveyed" without the consent of the company obtained in writing upon the policy, the policy should be null and void.

The dissolution of the firm of H., P. & Co., and the transfer of the whole property to the new firm of Hoffman & Place, was such a sale or conveyance as rendered the policy void. (Murdock a. Mutual Ins. Co., 2 Comst., 216, 218.)

While it may be said that this was a case of misjoinder, yet we submit the reasoning of the court covers this precise point, and is conclusive.

Tillou a. The Kingston Mutual Ins. Co. (1 Seld., 5 N. Y., 406), in which the decision in the general term, in the second district, upon this point in the same case (7 Barb., 570), is reversed.

See, also, Grosvenor a. The Atlantic Ins. Co. (17 N. Y., 391), where the case of Tillou (5 N. Y.) is reversed, but not upon

the point that the sale of the interest of one partner to his co-partners vitiates the policy. (See, also, 3 *Den.*, 301.)

Finlay *a.* The Lycoming Co. Mu. Ins. Co., 30 *Penn.* (6 *Casey*), 311, 313. This case is exactly in point, and is based upon the law as it was supposed to have been settled in this State. (See authorities cited by Mr. Parsons, arguendo.)

Dreher *a.* Ætna Ins. Co., 18 *Missouri* (3 *Bennett*), 128, 135, and 136. This case is also precisely in point, and settles the law in Missouri upon the authority of the cases in this State, above cited. (The opinion of Judge CADY, in 2 *Comst.*, in the Murdock case, is cited as conclusive.)

Dix and Others *a.* The Mercantile Ins. Co., 22 *Ills.*, 272, 277, and 278, is also in point. The cases in this State above cited are quoted as decisive of the point. We submit that the opinion of Mr. Justice BREESE, who delivered the opinion of the court, is conclusive.

Wood *a.* The Rutland Ins. Co., 31 *Vermont*, 552, 563. In this case, the court say, when one partner sells to his associates, there can be no recovery by the old firm for a subsequent loss, and cites the New York cases as authority.

In this district, the general term have held the other way, in an opinion by Mr. Justice ROOSEVELT (16 *Barb.*, 512). The learned judge does not cite a single authority; and it may not be unjust to say that, amid the onerous duties of that court, the decision was made without very great deliberation.

It is true, this case is referred to with approval in Dey *a.* Poughkeepsie Ins. Co., 23 *Barb.*, 623, 627. But the point was in no way involved in that case, and of course it cannot be regarded as authority.

Upon this point we respectfully submit that the law and reason are both with the defendants.

II. The judge erred in refusing to charge, that if H. & P. could recover at all, it could be only to the extent of their original interests.

As to that, the sale operated precisely as if Silvernail had sold to a stranger. (Howard *a.* The Albany Ins. Co., per BRONSON, J., 3 *Den.*, 301, 305.)

He should have instructed the jury to deduct from the amount of goods claimed in the proofs of loss to have been on hand at the time of the fire, the amount of the Silvernail in-

terest conveyed to Hoffman. This was a quarter interest of the whole concern.

III. The judge erred in not charging the jury that the plaintiffs cannot recover on account of the loss or injury to any goods acquired by them subsequent to the dissolution of the firm of H., P. & Co. (Wood a. Rutland Ins. Co., 31 *Vermont*, 552, 563.)

The business of Hoffman & Place was a new one. They were new parties, and to make these defendants liable for their loss, it must be shown that they have contracted with them. The new firm purchased $8,023.78 in new goods before the fire.

IV. The judge erred in not charging that the plaintiffs having stated the costs of the goods in the preliminary proofs of loss, are bound thereby, and cannot now claim that they cost any greater or higher amount. (Irving a. The Excelsior Fire Ins. Co., 1 *Bosw.*, 507, 514.)

V. The judge erred in amending the 8th request to charge, by adding thereto the words, " except such as, from their total destruction, they could not specify with more particularity than they have done."

There was no pretence that the plaintiffs could not describe or designate all the goods. Their books, papers, bills, and all their accounts were saved, and from them they could have made up, and did make up, their proofs of loss. The exception tended to lead the jury to suppose that other goods than those set forth in the proofs of loss might have been destroyed, and for which they were at liberty to make an allowance.

VI. The judge erred in refusing to charge the jury as ninthly requested.

1. On the 24th April, the plaintiffs furnished the defendants with a sworn statement of the property injured by the fire; in this statement they stated the total, just, and true cost of the goods.

2. By the terms of the policy, the cash value was the cost to replace them. The cost was fixed in the proofs by the plaintiffs, and they swear this cost was just and true, and we submit they should be bound by it, and the court should have so instructed the jury. Then after deducting the actual value of the goods in their damaged condition, the balance would have been the actual loss.

VII. The judge erred in refusing to charge that the price for which such goods were generally sold by or purchased from wholesale dealers and manufacturers, could not be taken as the basis from which the cost to replace the goods could be calculated.

1. These plaintiffs were wholesale dealers in, and manufacturers of, furnishing goods. In the proofs of loss, the first column of the statement showed the cost, and the other the selling price or cash value, as the plaintiffs termed it. The cash value was the plaintiffs' selling price, as they claimed.

2. Now we insist that the words, "cost to replace the goods," as used in the policy, does not mean what it would cost wholesale manufacturers and dealers to replace the goods by purchase at retail, nor what it would cost wholesale dealers to replace the goods by purchases from wholesale dealers. The cost to replace them means, in this case, the cost of reproduction or importation. The injustice of the rule that the cost to replace the goods, means what it would have cost the plaintiffs to have gone into the market and purchased similar goods from similar wholesale dealers, is too apparent for argument.

3. Should this construction prevail, and had the plaintiffs' entire stock been destroyed, they would recover not only the cost of the goods, but 30 per cent. profit upon the whole amount, without a credit of four months, or any losses from bad debts.

4. The judge not only refused to charge as requested under this point, but actually charged (under the defendant's exception), "that the jury should take what it would have cost the plaintiffs, at that time, to have gone into the market and purchased the same kinds and quantities of goods they had lost, as the basis upon which they should calculate the amount of the damage sustained."

The judge says, the basis should be what it would cost to go into the market and purchase. The contract says, it shall be what it would cost to replace them. Replace by whom? Certainly by the plaintiffs. How? Clearly as they were placed before—by manufacture and importation—in the ordinary way in which the plaintiffs created and provided their stock for sale. Certainly the word replace, in this connection, can mean nothing else. It is absurd to suppose it means the purchase in

the market at a profit of 30 per cent. on the manufacturer's price, when it was the plaintiffs' business to do that very thing.

We submit that this part of the charge was clearly erroneous.

VIII. The judge erred in refusing to charge that the proofs of loss in reference to the sum of $1,307.66, are insufficient; and as to that sum the plaintiffs were entitled to recover.

1. It will be observed that no portion of the books, inventories, bills, or memoranda of the plaintiffs was injured or destroyed by the fire. They could tell what goods they had in the store the night of the fire.

2. The 9th condition requires that, as soon as possible after the fire, the insured shall deliver as particular an account of the loss and damage as the nature of the case will admit.

3. Now, we submit, that the plaintiffs having all their books, inventories, and bills, were as able to give a detailed account of the particular goods making up the $1,307.66, as they did in making up the other amounts. After having given a detailed inventory from the books, of all the goods they had on hand on the night of the fire, they insert in a lump $1,307.66 for goods lost. Now they could not know they were lost except by the books; and if they appeared on the books, then they could have given the particulars of them, as they did of the other goods entered there.

We submit that the proofs, in relation to this round sum of $1,307.66, is not a compliance with the terms of the policy, and the amount should have been rejected; and that the defendant's exception to the charge of the judge upon this point was well taken.

IX. The judge erred in refusing to charge as twelfthly requested.

X. The judge erred in amending the 13th request.

1. The cash value was not, as ordinarily understood, the measure of the loss. The true measure was what it would cost to replace the property.

2. The amendment by the judge was an indication to the jury to allow for loss of trade and profits, provided they did not in the total amount exceed the cash value of the property at the time.

This was error, and tended to mislead the jury.

XI. The judge erred in charging the jury substantially that the relaundrying of the shirts was a matter not to be taken into consideration by them.

The principal portion of the stock was shirts, bosoms, and collars, from two-thirds to three-fourths in amount.

It was proved that these goods could have been relaundried at a small expense, and when so done would have been just as good as when new. Now we insist these facts should have been taken into consideration by the jury in determining what it would cost to replace them.

The charge on this point we submit, with deference, was clearly erroneous.

XII. The judge erred in instructing the jury that they should take his figures as stated by him, as the basis of their calculation, if they concluded to find a percentage of damage.

*B. Sandford,* for the plaintiffs, respondents.

BY THE COURT.*—ROBERTSON, J.—The policy in this case declares the subject insured by it to be merchandise contained in a certain building, either "Hoffman, Place & Co's," or held by them in trust or on commission, even if sold, provided it was not delivered. The defendants also by it agree to make good, not only to the insured (H., P. & Co.), but also to their executors, administrators, and assigns, any loss by fire to the property insured for a year. Another clause in the policy declares it to be null and void, if the property insured is sold or conveyed. This conflicts with the description of the subject of insurance, which permits the property to be sold, if not delivered. If they are to be reconciled by supposing the description to create an exception to the annulling clause, the difficulty remains of the kind of sale intended. It would be superfluous to provide for a sale to customers, because the assured would have no insurable interest. The annulling clause, which is printed, seems to have been intended for subjects of insurance existing when the policy was executed, and not for a suspended policy like the one before us, which had no vitality, until some merchandise was brought into the building in question, to

---

* Present, ROBERTSON, WHITE, and BARBOUR, JJ.

which it could attach. (Hooper *a.* Hudson River Fire Ins. Co., 17 *N. Y.*, 424; Dey *a.* Poughkeepsie Insur. Co., 23 *Barb.*, 623.) And yet, what is required to be sold, is not the interest of any of the assured, but the property itself. The loss to be paid for is not damage to such interest, but to the "property" itself; and the parties, whose loss is to be made good, are not merely the assured, but their representatives if they die, or their assigns if they live. These provisions certainly look to a sale of the goods out and out, particularly in connection with the permission to sell without delivering, and not to a mere change of interest among the parties. The clause itself, which renders the policy null and void, is so wholly inappropriate as applied to a shifting policy, on a fluctuating stock of goods, that it could be entirely rejected, without great violence, as inoperative.

But whatever the meaning of the term "sold" may be, the annulling clause must be strictly construed. (Livingston *a.* Stickles, 7 *Hill*, 253; S. C., 8 *Paige*, 398; Jackson *a.* Harrison, 17 *Johns.*, 66.) Under a similar one, both an executory contract of sale and a mortgage, have been held not to be a sale. (Masters *a.* Madison Co. Mut. Ins. Co., 11 *Barb.*, 624; Conover *a.* Mut. Ins. Co., 1 *N. Y.*, 290.) There would be no entire sale, even of the interest of any joint assured, while he retained the slightest interest in the property. And the only purpose of prohibiting a sale by any of the parties would be to compel each one to retain some interest. It is difficult to perceive what benefit that would bestow on the insurer, unless it were accompanied by a positive obligation, by each of the assured, to be actively employed in taking care of the property. Otherwise it would only increase the number of persons having an interest to commit a fraud. It is supposed by the author of a note in the second volume of Parsons on Maritime Law (p. 46), that the fatal effect of a release by one partner to others of his interest in goods insured in a policy, having such a clause in it, is owing to the loss by the underwriter of the character, exertions, and vigilance of every assured to prevent a fraud. But unless there is something in the policy entitling the insurer to the positive efforts of each assured to prevent fraud, I do not see how the possibility of a contracting party being so honest and vigilant as to prevent fraud by his co-contractors,

aids the underwriters. All policies are framed on the theory of there being temptations to commit fraud, and with a view to guard against it by positive stipulations and conditions. Otherwise the fact of making a contract at all with several persons constituting the assured, assumes that they are all fit to be trusted. The possibility of fraud, arising from the increase of the number of persons to be tempted, is practically greater than the probability of the discovery and prevention of the fraud by the possible conscience and vigilance of the added parties, against their own interest. The substitution of a new party, by assignment, without the consent of the underwriters, but not the withdrawal of one of the original assured, may increase the risk. In every case, where the effect of a clause in a policy prohibiting alienation of the subject of insurance has been discussed, its purpose has been considered to be the same as that prohibiting underletting, or assignment in a lease; which was, that the person who could avail himself of such a provision, may know with whom he is dealing, and not be made to contract with a stranger. This reason can only prevail when a new party intervenes, and never when one of the former contracting parties merely releases his interest to his co-contractors.

The foregoing views are applicable to every case of an insurance of several persons; but in the present one, the assured were partners, and insured as forming a partnership. They were, therefore, entitled to exercise all the rights of partners, and were to be subject to all their responsibilities. One of the consequences of a partnership is, that the interest of any partner may be virtually transferred by operation of law to the others, by his taking more than his share of the partnership profits to his own use; or, by his insolvency, may go to his creditors, or, by his death, to his representatives. The representatives of any who die become joint owners with the survivors. The annulling clause in question could never have been intended to reach such a change of interest; and if not such, why should it be supposed to have been intended for any release by either partner to any of the others? It should require the most explicit expression of such an intention, before it could be assumed that the assured intended to lose all benefit of the policy after having paid the premium, in case any of

them relinquished his interest to his associates. (Wilson a. Genesee Mut. Ins. Co., 16 *Barb.*, 511.)

The question of the effect of the release by one of the assured to his co-assured of his interest in the subject insured, where a policy contains a provision avoiding it in case of a sale of such subject, has not yet been definitively settled in the court of *dernier resort* in this State. But the reversal by it of the judgment of the Supreme Court in the two cases of Tillou a. Kingston Mut. Ins. Co. (7 *Barb.*, 70; S. C., 5 *N. Y.*, 406) and Wilson a. Genesee Mut. Ins. Co. (16 *Barb.*, 511; S. C., 14 *N. Y.*, 418), where that question had been raised, and passed upon in the court below, without disposing of it, is strong evidence of the leaning of that court. There was not even a word of disapprobation of the doctrine of the court below in regard to it. Moreover, in the two cases of Howard a. Albany Insurance Co. (3 *Den.*, 301) and Murdock a. Chenango Insur. Co. (2 *N. Y.*, 210), cited as authority for the contrary, in which the question in fact arose, the respective courts, before whom they were, placed their decision upon the ground merely of the improper joinder, as plaintiff, of the party who had released his interest to the others. Yet, strange to say, these separate cases decided in Illinois, Missouri, and Pennsylvania, respectively, by some misapprehension, have held that such a release made a policy, containing such a clause, void, upon the authority of the two cases last cited. (Dix and Others a. The Mercantile Ins. Co., 22 *Ills.*, 277, 278; Dreher a. Ætna Ins. Co., 18 *Miss.*, 135, 136; Finlay a. Lycoming Mut. Ins. Co., 30 *Penn.*, 311–313.)

No reason derived from authority warrants any departure, therefore, from the doctrine as laid down in Tillou a. Kingston Mut. Ins. Co. and Wilson a. Genesee Mut. Ins. Co., in the Supreme Court, strengthened as they are by the subsequent approbation of that doctrine in the cases of Dey a. Poughkeepsie Mut. Ins. Co. (23 *Barb.*, 623), in the Supreme Court, and Buffalo Steam Engine Works a. Sun Mut. Ins. Co. (17 *N. Y.*, 412), in the Court of Appeals.

The refusal, therefore, of the judge at the trial of this cause, to charge that the release of one partner to one of the plaintiffs avoided the policy as to all, was therefore correct.

The next question that arises is, whether the plaintiffs can

recover for the interest in the merchandise assigned to one of them by his copartner; in other words, for the whole of the damage to the property. This is equally involved in the damage to the merchandise bought by them after his retiring from the firm, and must turn, not upon the question of a sale by him, but of the acquisition by them of his interest and his losing it. As the policy is a contract of indemnity, and the plaintiffs are injured to the extent of the whole damage to the property insured, if they can maintain an action in their own names alone, there would seem to be no reason why they should not recover the whole of their loss. The cases last referred to, which pass upon the effect of a release by a joint owner to his co-owners, in case of a similar clause, put the deprivation of the party who has parted with his interest, of all right to join as plaintiff, upon the ground that he has parted with his interest. This recognizes a fire-policy as being a contract with the assured named in it, only so long as they have an insurable interest, and with such of them as retain such an interest, after the others have parted with theirs. If the assured having an insurable interest are entitled to join in an action, and are entitled to recover at all, I see no reason why they should not recover the damage to the whole property, from whomsoever they derived it. If new merchandise bought by them could be covered by the policy, certainly, although the plaintiffs acquired the title to what they had on hand by two purchases, the latter must be equally protected.

Besides this, the policy expressly provides that the defendants shall pay any loss " to *the property* insured," and not merely to the interest of the plaintiffs therein. Any limitation of the recovery of parties insured, to the extent of their interest, is derived from general principles of law alone. That interest in this case was equivalent to the entire ownership of the goods. The policy also provides for any loss to the successor and *assigns* of the assured, as well as to the latter themselves. On all of these grounds, therefore, the refusal of the judge on the trial to direct the jury to disregard the interest assigned by the retiring partner, and not to allow for goods bought after he retired, was correct.

I am unable to perceive any connection between the proof of the cost of manufacturing articles similar to those injured

by the fire in question, and the actual cost of those articles as stated in the inventory. Although the latter is required, by the ninth condition attached to the policy, to be stated in the preliminary proofs, the same condition provides that the amount of *sound value* shall be ascertained by appraisers, and that such sound or *cash value* of the property destroyed or damaged by fire shall be what it may cost at the time of the fire to replace it. No evidence was offered of a different actual cost than that stated in the inventory in the preliminary proofs. If it had been, I am not prepared to say that the case of Irving *a.* Excelsior Fire Ins. Co. (1 *Bosw.*, 507) would have excluded the correction of mistakes. (Am. Ins. Co. *a.* Griswold, 14 *Wend.*, 399.) The defendants were not bound by the policy to pay the actual cost, nor were the plaintiffs limited to it; although when furnished it afforded some criterion as to the value of the articles at the time of the loss. Indeed the plaintiffs furnished the cash value as well as the cost in their inventory. The request to charge that the plaintiffs could not claim that the merchandise cost any more than they stated it to have cost in their preliminary proofs, was therefore ambiguous in not defining what kind of costs was meant. If it meant the cost of similar articles in the market, it was probably refused because not warranted by law; and if it meant actual cost of these identical articles, there was no aliment for the instruction in the evidence.

The learned judge before whom the cause was tried was correct in qualifying his instruction that the plaintiffs could only recover for the goods set forth in their schedule, with the exception, that those might be recovered for the total destruction of which prevented more particularity in specifying them, accompanied as it was by a reference to the destruction of books and papers in his charge. (Norton *à.* Rensselaer and Saratoga Ins. Co., 7 *Comst.*, 645; McLaughlin *a.* Wash. County Mut. Ins. Co., 23 *Wend.*, 525; Bumstead *a.* Dividend Mut. Ins. Co., 12 *N. Y.*, 81.) The policy itself, in its ninth condition, required only as much particularity as the nature of the case would admit of. The original actual cost of the goods not being the standard of value agreed upon by the parties, it would have been error to have charged, as requested, that the loss of the plaintiffs was to be ascertained by deducting the value of the goods in their damaged state from their original cost; and the

refusal so to charge was proper. The price for which whole-sale dealers and manufacturers sold similar goods was one mode of aiding in arriving at their market value, and instructing the jury to the contrary would have been erroneous; the direction actually given in that respect was proper. So far as any loss in the business of the plaintiffs, or of profits in the course of their business, was embraced in the difference between the cash value of the articles damaged and their actual cost, the plaintiffs were entitled to recover, because the measure of their indemnity was present cash value, not original cost; and by whatever name the difference may be called, the plaintiffs are entitled to it. To have instructed the jury, as requested, that they were not, would have been erroneous, and was properly withheld. The plain-tiffs, of course, were entitled to interest on the amount of their claim from June, 1862, being thirty days from the day of pre-senting the claim, at which time, by the terms of the policy, it was payable. (Vandenheuvel a. United Ins. Co., 1 *Johns.*, 406; Van Rensselaer a. Jewett, 2 *N. Y.*, 141; Livingston a. Miller, 11 *N. Y.*, 80.)

The clause in the policy respecting the duty of the assured in regard to the protection of the property insured was properly interpreted by the learned judge in his charge. They were not bound to use any means or incur any expense to restore the merchandise injured to its previous condition; they were only bound to take the necessary steps to prevent deterioration, and place it in a condition to be examined. If the attempted use of such means should result in a deterioration of the article, the defendants would not be liable for that injury. The jury had a right to take into consideration the feasibility of the use of such means in restoring the goods, and its expense, in fix-ing the market value. But the defendants, in the absence of any stipulation to that effect, had no right to impose on the plaintiffs the burden, risk, and delay of relaundrying the dam-aged articles for their benefit. The exception to the charge in that respect was not well taken, besides being to a whole para-graph, some parts of which at least were correct beyond all question.

An exception was taken on the trial to a part of the charge to the jury, consisting of a statement of figures, upon the basis of which they were instructed to proceed to estimate the dam-

age done to the goods in case they took a percentage of injury as the mode of arriving at it. This statement consists in a great measure of facts. Some of the propositions contained in it are unquestionable. No objection was made to it upon the ground that the facts were misstated; and no particular instruction contained in it as regards the law was singled out as an object of exception. The exception taken should fail upon that ground. The jury were in such statement substantially directed to take the market value of the injured goods and the value of those entirely destroyed as the basis of their calculation of damage. The market value, as placed upon them in the preliminary proofs of loss, was stated not to be contested; and the residue of that value, after deducting the value of goods uninjured, was required to be part of such basis; and the jury were directed to take a certain other sum as the value of goods entirely destroyed, for the other part of such basis. That sum was stated to be arrived at by taking the value on an inventory made at the time of the retiring of one of the partners, and adding to it purchases to the time of the fire, deducting from such sum the amount of subsequent sales and goods subsequently discovered, which the learned judge stated would leave such value as that of the destroyed goods. Of course, he did not add that from such difference was to be deducted the value of the remaining goods, it being plain that such was his meaning. It is true the calculation would make a larger amount destroyed than was stated by the learned judge; but that is no cause of exception by the defendants. There was, it is true, evidence adduced of other injured goods belonging to the plaintiffs in the building in question, besides those contained in their first schedule of loss, whose value was given at cost prices; but there was no request to the judge to instruct the jury that they were to be taken into consideration in estimating the goods totally destroyed. It does not clearly appear what kind of estimate was put on the stock on hand when one partner retired and assigned to the others. The jury certainly had a right to determine from the value of the goods at that time, subsequent sales and purchases, and the value of the goods on hand after the fire, if uninjured, if such values were estimated by the same standard, whether the difference was caused by an actual destruction of property by the fire or any other cause;

and if by an actual destruction, the extent of it. If there was no dispute about such values, and no evidence to account for the existence of such difference, it was a mere matter of calculation. If the learned judge assumed as the foundation of his instruction that there was no such dispute erroneously, that error should have been corrected, not by an exception, but by calling his attention to it to have the correction made. And if he overlooked the supplementary statement in the preliminary proofs as an element in determining the actual destruction of property and its value, his attention should have been called to. such omission. The value of the property uninjured, in making such calculation, was immaterial, as it ought not to be deducted at all from the sound value of the remaining goods in ascertaining the complete destruction of property, since it still remained in existence. The value of the destroyed property does not seem to have been questioned at all throughout the trial, and was sustained by evidence; and if any error was made in that respect, it is not to be questioned for the first time now on exceptions. Moreover, there was no direction given to the jury to allow that amount of damage, but merely that they were to take it as part of the basis of their calculation in finding a percentage of damage, along with the value of the goods remaining in existence, which they had a right to do. The loss, with interest, appears from the verdict of the jury to have been estimated by them at about $8,150, or, with the interest for eight months deducted, about $7,800. The estimated cash or present market value of all the injured goods, if sound, was nearly $17,700; deducting $1,300 as the value of the destroyed goods, from the estimate of damage by the jury, leaves $6,500 as their estimate of damage to the injured articles, being less than 40 per cent., and less than the average between 10 and 75 per cent., the extreme rates furnished in the testimony given on the trial. Including the entirely destroyed property, the estimated rate of damage would be about 46 per cent. Unless the jury were bound to take the cost of the articles instead of their cash or market value as the basis of computation, no great injury was done to the plaintiffs by the direction to assume the value of property destroyed as that testified to and apparently undisputed on the trial.

Several exceptions were taken in the course of the trial to

the admission of testimony, and its exclusion. Most of such exceptions involved the same principles as those previously discussed; and the far larger part related to evidence of an advance of the goods in value after they were purchased by the plaintiffs up to the time of the fire. One was to an instruction by the learned judge in his charge, that the plaintiffs were entitled to recover for damage to the subject of insurance by water used to extinguish the fire, which, of course, was untenable. One of the witnesses was asked to state what was the whole cost value of the stock found after the fire, and was informed he could refresh his recollection by reference to a book, which was objected to. Whether this objection was made to his stating the cost value, or looking at the book, does not appear, nor whether he looked at the book at all. The question as to the statement was, undoubtedly proper, as the witness had shown a knowledge of the subject, and was properly admitted: the objection was therefore properly overruled. On another occasion an inventory of goods, of which the cost prices were taken from the plaintiffs' bills and books of account was stock received under objection and exception. This had been admitted by the defendants to contain a correct statement of the stock of the plaintiffs, and the calculations of amounts in it were proved to be correct. No objection was taken to it specifically, that it was a mode of leading the witness, or that it was mere secondary evidence, the original bills and books not being accounted for. If the objection had stated those grounds, the defect might have been cured on the trial, and the objection taken was properly therefore overruled. A schedule marked "defendant's answer," of whose nature and contents there was no evidence, was also properly excluded. Another witness (Cleveland) testified to an appraisal of loss made in an inventory after examining the goods, and the total amount thereof was given by him; it consisted of nearly seven hundred items, and he was asked by the party calling him to read from it the names of every article, and the percentage of damage upon it "*seriatim*," which was prevented by the court. As the only result of such a course would have been an unnecessary waste of time, had the threat been carried out, it was properly cut short; whether it could have been taken on a cross-examination under some possible condition of things, is

a different question. In like manner, an inventory testified to by another witness (Hyatt) as made by him, was properly excluded; as he was able to, and did testify to the estimate made by him, of the loss, without it. Some questions were properly excluded as leading, and others as irrelevant, not necessary to be passed upon separately.

The labor of examining in this case the questions now presented, by judges unfamiliar with the evidence on the trial, has been much increased by the unnecessary voluminousness of the case, caused by inserting questions withdrawn, answers excluded without objection, exceptions by the plaintiffs' counsel, a great deal of testimony not necessary to raise the questions on the exceptions, contrary to general rule 36; and the whole testimony in the form of question and answer, notwithstanding all the questions were not objected to. The labor of reducing the case to its proper proportions is thus thrown on the whole court at the hearing, when it should have been done on the settlement of the case. It would seem that the present case never had been submitted for settlement. The 36th rule just referred to seems to imply that this should be done in all cases. The growing evil of improperly prepared cases may call upon the court to refuse to hear causes where they are offered, and treat them as if no case had been made. The same inattention has been noticed before in other cases, but without apparently any good effect.

The exceptions having been rightly disposed of on the trial, and there appearing no error in the charge of the court, or refusal to charge as requested, the judgment appealed from must be affirmed, with costs.

BARBOUR, J. (dissenting.)—It is an elementary principle, that a policy of insurance is a personal contract, whereby the insurer engages to indemnify the assured for such loss as he may sustain by reason of the perils insured against, and that such contract is not assignable, before loss, without the consent of the obligor. (1 *Arn. on Ins.*, §§ 1, 8, 9, 13; Skinner *a.* Somes, 14 *Mass. R.*, 107; Jessel *a.* Williamsburgh Ins. Co., 3 *Hill*, 88; Wood *a.* Rutland & Add. M. F. Ins. Co., 31 *Vt. R.*, 552.) Besides, there is no pretence in this case that any assignment or transfer was ever attempted to be made by Silvernail of his

interest in the policy, to his partners, or either of them; so that it is quite clear, that the plaintiffs are not entitled to recover, by virtue of any assignment of the policy, as representatives of the interest therein of the copartnership firm insured, and of which they constituted but two of the three members. If they can succeed at all, it must be upon the ground that the contract of indemnity enured to their individual benefit as members of the firm, and that it covered all the property of which they, as copartners in another firm, were the owners, when the loss occurred.

But in the case before us, the insurance, it appears to me, was intended to be made with all the copartners jointly, and covered their joint interest as such in the property of the firm; and nothing was designed to be included in the contract except such of the property, described therein, as should continue to belong to them all, as copartners, at the time a loss should occur. The insurers took just this risk, and no other, and the assured accepted the policy with that understanding; and, each and all of them must be held to have assumed, with such acceptance, the legal obligation. always incumbent upon parties procuring an insurance upon their property, that each of them would exercise reasonable and proper watchful care and prudence, for the protection of the property insured, and intended to remain in their hands. In the event which has occurred in this case, therefore, I think the defendants may well say, in answer to the plaintiff's claim, " Confiding in the habits, good sense, and prudence of Silvernail, and believing that the safety of the goods would be cared for by him, we executed the policy, when, without that, we would not have taken the risk; and we had, therefore, a legal right to expect a continuance of such care and prudence on his part: our contract was made with him and his two partners, jointly, and not with either two of them without the other; and we agreed to indemnify them for such of the goods, described in the policy, only, as should belong to the firm of Hoffman, Place & Co., at the time a loss should occur."

The authorities upon this point are not only numerous, but, in this State, somewhat conflicting. The first in time, of those I shall consider, is Howard & Ryckman a. The Albany Ins. Co. (3 Den., 301), which was an action, brought in the name

of both of the parties insured, to recover for a loss alleged in the declaration to have been sustained upon a fire-policy issued to them by the defendants. The defendants plead, that, after the insurance, and before the loss, the plaintiff Ryckman sold and transferred all his interest in the property covered by the policy to Howard, to which the plaintiffs demurred specially. The question thus brought directly before the court was precisely like this, except that, in the former case, the policy contained no restriction whatever, in terms, upon the sale of the subject insured (a matter, by the way, which I will hereafter consider). A majority of the court, Justices BEARDSLEY and JEWETT, sustained the plea demurred to, upon the ground that the plaintiff, for whose benefit the action was brought, could not recover for any portion of the loss, inasmuch as the persons insured had no joint interest in the property at the time such loss occurred; and judgment was ordered for the defendants. Justice BRONSON, however, dissented, holding that the contract of insurance was not terminated when the plaintiffs ceased, by a sale from one to the other, to have a joint interest. "The case," he says, "is not free from difficulty; but I think there may be a recovery on account of the interest which Howard had in the property at the time the contract was made, because that interest continued until the loss happened. But there can be no recovery on account of the interest which Ryckman had in the property at the time the contract was made, because he had parted with that interest before the loss."

Murdock & Garrett *a*. The Chenango Mutual Ins. Co. (2 *Comst.*, 210) was an action upon a policy issued to the plaintiffs as owners of a mill. After the insurance, but before the loss, Garrett conveyed his interest in the premises to Murdock. Upon the trial, the defendants moved for a nonsuit, upon the ground, among others, that the joinder of Garrett in the action was fatal to a recovery; which motion was denied, and the plaintiffs had judgment. Upon appeal to the court of last resort, the judgment was reversed, and a new trial ordered. Judge CADY, in delivering the leading opinion in that case, remarked: "The question is, whether an action can be sustained in the names of both, when one has no legal interest in the suit. The joint interest in the property insured was destroyed when one conveyed all his interest to the other. That act, in which

both concurred, rendered it impossible that a loss could afterwards happen within the meaning of the policy; the joint property of the insured could not thereafter be destroyed by fire, because they had no such property." . . . "If one of two owners of a mill, who are jointly insured, sells his part to a stranger, it may appear like a hardship that such sale should destroy the policy; but it is no more than happens in all cases where there are joint promisees, &c., and one of them discharges the promise." . . . "In this case, both the promisees concurred in the act which destroyed the joint remedy on the contract." This decision was subsequently discussed, and its principle reaffirmed by the Court of Appeals in Tillou a. The Kingston Mutual Ins. Co. (5 *N. Y.* (1 *Seld.*), 405), where it was held that the former case, and Howard a. Albany Ins. Co. (*supra*), were conclusive upon the subject; thus reversing the decision of the general term in the second district, where Judge BARCULO had expressed a contrary opinion.

These cases in our highest appellate court authoritatively overrule the evidently hasty decision of the Supreme Court, first district, in Wilson a. Gen. Mutual Fire Ins. Co. (16 *Barb.*, 512); and they have been followed by the Supreme Court of Vermont in Wood a. The Rutland & Addison Mutual Fire Ins. Co. (31 *Vt.*, 552); a case which, so far as the naked question now under consideration is concerned, seems to be precisely like this. There, a policy upon merchandise in trade was issued to Wood & Co., a firm composed of Wood & Johnson. Afterwards, Johnson having died, Wood purchased the interest belonging to his estate, and continued the business of buying and selling merchandise on his own account, up to the time of the loss. The court, in an action brought by Wood upon the policy, held that if the plaintiff had continued in the care and possession of the goods as surviving partner only, an action might have been sustained by him as such survivor; but that, as his claim rested upon his purchase of the interest of his deceased partner, and the continuance of the business for his own benefit, he could not recover. In speaking of the effect of a sale by one of the assured partners to the others, and in approval of the decisions in Murdock a. The Chenango Ins. Co., the court says: "This has sometimes been put upon the ground that, at the time of the loss, the old firm had no insurable in-

terest in the property. But, we think, where there is a volun-tary change of the firm, the insurance company may, also, well say that the new firm is not the party with whom they contracted." . . . "They might be willing to insure Wood while connected in business with Johnson, and wholly unwilling to insure or deal with him alone."

Upon these authorities, and for the reasons I have suggested, I have no hesitation in holding that, independent of the clause in the policy prohibiting the sale of the insured property, and solely upon the principle that the risk only extends to such of the property as continues to belong to all of the assured at the time of the loss, and that such assured, and they alone, can sustain an action upon the policy, the plaintiffs in this case cannot recover, and that the refusal to charge as requested in this regard was erroneous.

If such must be the result in cases where no provision is contained in the policy, in terms restricting the power of sale by the assured, *a fortiori*, it seems to me we must arrive at the same conclusion where such prohibition is inserted and directly expressed in the contract itself, with the assent of the parties insured, as in this instance; and so we find it has been decided in sundry cases in the highest courts of our sister States.

In Dix *a.* Mercantile Ins. Co. (22 *Ills.*, 272), an insurance was effected by a firm composed of three partners, upon its stock of merchandise. The policy contained a condition that the instrument should be void in case of a transfer or change of title of the property insured, or of an assignment of the policy. One of the partners sold his interest in the goods to the other two, previous to the loss. The Supreme Court of Illinois held that such sale avoided the policy and terminated the liability of the insurers. Judge Breese, in delivering the opinion of the court, uses this language: " A contract, as well of insurance as in regard to any other matter, must be interpreted according to the intention of the parties making it; and that is to be gathered from the language employed and the objects contemplated by it. The intention of the company was manifestly that no strangers should come into the care and management of this property without their consent. Knowing the parties with whom they contracted, and relying upon the fidelity and circumspection of each and every one of them, they

were willing to take the risk at the premium stipulated." . .
"They were willing, for the premium, to intrust the property
to the care and guardianship of Sinclair, Dix, and Harris, but
not to the care and watchfulness of Dix and Harris alone.
Is it not clear that the assurers may be as greatly prejudiced
by removing one to whom, with others, they had intrusted the
guardianship of valuable property, as by the introduction of a
stranger? The one removing from the concern may have been
the very one on whose vigilance, fidelity, and care the greatest
share of confidence was reposed; and by so removing, the haz-
ard is increased to the insurer, without any corresponding in-
crease of premium."

Finlay & Stanley a. The Lycoming County Mut. Ins. Co.
(30 Penn., 311) was an action upon a policy issued to a firm
of two partners, containing a similar provision, and where one
of the partners had sold his interest in the insured property to
the other, before the loss. The Supreme Court of Pennsylvania
held that the plaintiffs could not recover. Justice THOMPSON,
in pronouncing the decision, after stating that it was a funda-
mental condition of the contract that alienation of the property
should render the policy void, added: "It cannot be doubted
that a sale by one partner to another is within the prohibition."
. . "By the transaction, the one parted with all his interest,
and the other acquired double what he previously possessed."

A like conclusion was arrived at by the Supreme Court of
Missouri in a case of the same character. (Dreher & Bumb a.
Ætna Ins. Co., 18 Missouri, 128.)

These decisions of the ultimate appellate courts of Pennsyl-
vania, Illinois, and Missouri, it is unnecessary to say, are en-
titled to the highest respect as authorities; and I have been
unable to find in the books any opinion of a contrary tenor
upon this particular point. Without examining the further
exceptions contained in the case, I am, therefore, in favor of
reversing the judgment, and directing a new trial.

Judgment affirmed.