Jewett, C. J.
 

 This was an action of ejectment brought ta recover the possession of about one hundred a,eres of land, situate partly in the town of Guilderland and partly in New Scotland, in the county of Albany—for a forfeiture supposed to have been incurred by a breach of the condition of re-entry for the non-performance of the covenant to pay certain rent reserved. Stephen Van Rensselaer, deceased, being seized in fee of a tract of land containing 188T5„- acres, of which the premises in question are a part, on the 8th day of December, 1813, by a lease or grant of that date, made between him of the first part and William Davis of the second part, in consideration of five shillings, and also in consideration of the yearly rents, covenants, reservations, provisos and conditions therein contained, on the part of the party of the second part, his heirs, executors, administrators and assigns, to be paid, kept, observed and performed, granted, to the party of the second part, and to his heirs and assigns, the said tract of land containing J 88T%- acres—with certain reservations, to have and to hold the same, except as before excepted, to the said party of the second part, his heirs and assigns
 
 for
 
 ever—yielding and -paying therefor yearly, and every year during the continuance of the grant, unto the said Stephen Van Rensselaer, his heirs and assigns, the yearly rent of
 
 eighteen and three-fourth bushels' of good clean merchantable winter wheat, four fat hens,
 
 to be delivered at the then mansion house of the said Stephen Van Rensselaer, in the town of Watervliet, unless
 
 specially directed
 
 by the said Stephen Van Rensselaer, his heirs, administrators, or assigns, to be delivered at some other place, not more than one mile distant from the said mansion house, or the spot on which it was then erected, and
 
 perform one dap’s service with carriage and horses;
 
 the first payment to be made the first day of February, then next,
 
 *143
 
 and thereafter in and upon the said first day of February in eacl year.
 

 The lease, among other things, contains a covenant on the part of the party of the second part, his heirs, executors, administrators and assigns, that he, his heirs, executors, administrators and assigns, would from time to time, and at all times thereafter, well and truly pay or cause to be paid unto the said Stephen Van Rensselaer, his heirs and assigns, the yearly rent so above reserved at the days and times and in manner aforesaid ; and a covenant on the part of the lessor to warrant and defend the said premises to the party of the second part, his heirs and assigns, against any person or persons lawfully claiming the same; “ Provided always, nevertheless, that if it shall so happen that the rent above reserved, or any part thereof, shall be behind and unpaid by and for the space of twenty-eight days next after the said days of payment, that then and in every such case, it shall and may be lawful to and for the said Stephen Van Rensselaer, his heirs, and assigns, or any of them, at the option of the said Stephen Van Rensselaer, his heirs or assigns, at any time thereafter, either to prosecute for all the rents then due, in some court of record, or in person, or by his or their servant or servants, bailiff or bailiffs, into
 
 the whole
 
 or any part of the premises to enter, and there to distrain, &c.”
 

 “
 
 And provided further,
 
 and these presents and every thing herein contained are upon this express condition, that if it should at any time happen,
 
 that no sufficient distress can he found upon the premises, to satisfy such rent due and in arrear as aforesaid; or, if either of the covenants and conditions
 
 herein before contained, on the part of the said party of the second part, his heirs and assigns, to be performed, fulfilled and kept, shall not be performed, fulfilled and kept, or shall be broken, that then,
 
 and in each and every such case,
 
 from thenceforth^ and at all times thereafter, it shall and may be lawful to and for the said Stephen Van Rensselaer, his heirs and assigns, or any of them, into the whole of the said hereby granted premises, and into any and every part thereof in the name of the whole, to
 
 re-enter,
 
 and the same, as his and their former estate to have again, re-possess and enjoy, and the said
 
 *144
 
 party of the second part, his heirs and assigns, and all others, thereout and from thence utterly to expel, put out and amove, and that from and immediately upon such entry made, by the said Stephen Van Rensselaer, his heirs or assigns, then these presents and everything herein contained shall cease, determine and become void and of no effect, this indenture, or any thing herein contained, to the contrary hereof, in anywise, notwithstanding.” Stephen Van Rensselaer died in 1839, and the plaintiff is his devisee. On the trial it was proved that the plaintiff, by his agent duly authorized, on the first day of March, 1843, at half-past five o’clock in the afternoon of that day, on the front-steps of the mansion house mentioned in the lease, at the door thereof made a demand of the rent as follows “ By virtue of the letter of attorney which I now hold in my hand, I do for and in the name of Stephen Van Rensselaer, demand payment of eighteen and three-quarters bushels of good clean merchantable winter wheat, four fat hens, and one day’s service with carriage and horses, reserved in and payable by virtue of a lease made by the late Stephen Van Rensselaer to William Davis, on the eighth day of December, 1813. The counter parts of which, made by the said William Davis, I now have in my hand and that no one appeared to pay the samé. It was also proved that the lessee,- about twenty years before, left the premises demised and went to Canada, that one Comstock was in possession of the east part of the farm, and that the defendant was in the possession of the residue, containing about 100 acres—and had occupied it for four or five years past. It was admitted that at the time the demand of rent was made; there was a sufficient distress on the premises to satisfy all rent unpaid. The plaintiff was non-suited, exceptions were taken, upon which the supreme court gave judgment for the defendant, and the plaintiff brings error to this court.
 

 The first question which I shall consider is, whether there is a right of
 
 re-entry
 
 reserved by the terms of the lease, upon a
 
 simple breach of the covenant to pay the rent as reserved,
 
 there being at the tilne a sufficient distress to be found on the demised premises to satisfy such rent,-twenty-eight days next after the first day of February ? If we adhere to the language
 
 *145
 
 which the parties have used, rather than go upon intentions not expressed, it is plain, as I think, that there are
 
 two
 
 conditions of re-entry provided for, by the
 
 proviso.
 
 First, a right of re-entry if “ no sufficient distress can be found upon the premises to satisfy such rent
 
 due and, in arrear
 
 as aforesaid.” This proviso of re-entry evidently applies, only where at the expiration of the 28 days mentioned in the preceding
 
 proviso, “
 
 no sufficient distress” can be found on the premises to satisfy the rent which had remained
 
 due and in arrear,
 
 during the 28 days next after the first day of February—the day on which it is appointed to be paid by the
 
 reddendum.
 
 To have advantage of that condition of re-entry, the party must show the rent to be-due and in arrear, and a want of a sufficient distress upon the premises, on the 28 th day next after the first day of February. And, secondly, a right of re-entry, “ if either of the covenants and conditions herein before contained on the part of the' said party of the second part, his heirs and assigns, to be performed, fulfilled and kept, shall not be performed, fulfilled and kept, or shall be broken.”
 

 The covenant to pay rent, as, indeed, all the other covenants of the lessee, ef which there are several, precede this clause in the lease, and clearly come within the language, as well as the meaning, of this second proviso of re-entry, and to which it is plainly applicable. The covenant is absolute aúd unqualified, and although there may be a sufficient distress to satisfy the rent, both at the day it is made payable, and at the expiration of the twenty-eight days next thereafter, the lessor is not bound to take his remedy by distress, but may have it by way of re-entry upon a breach of the covenant to pay the rent. It is said that there are no
 
 express words
 
 in the lease giving a right of re-entry for
 
 non-payment
 
 of rent; and that in all the old leases, and in all the cases where the right of re-éntry has been asserted, it has been provided for
 
 expressly
 
 upon
 
 non-payment
 
 of rent in terms. It is true, that the right claimed is not founded upon the ordinary
 
 proviso
 
 found in leases, providing for a re-entry for
 
 non-payment
 
 of rent, but upon a
 
 proviso
 
 or
 
 condition
 
 expiessed for a
 
 breach of the covenant to pay rent
 
 
 *146
 
 which has the same legal effect.
 
 (Doe
 
 v.
 
 Robson. 2 Carr & Pay. 245; Arch. L. & T.
 
 160.)
 

 It is also said that the parties had, by a previous clause, provided a remedy for the non-payment of the rent—that is, a reentry in case of a want of sufficient distress “ to satisfy the rent due and in arrear as aforesaid,” and that this involves both a breach of the covenant to pay rent and a want of a sufficient distress—rthat is, rent must be due and in arrear, and no sufficient distress to be found on the premises to satisfy it—must exist before the right of re-entry can be exercised. The rule, it seems, is well settled that a
 
 general
 
 clause of re-entry can extend only to cases not
 
 before
 
 specially provided for; more especially' where it would otherwise contradict and defeat the prior express provision.
 
 (Smith
 
 v.
 
 Doe, 2 Brod. & Bing.
 
 526,
 
 per Holroyd, J.; Per Park, J. 540; Shep. Touch, ch. 5, p.
 
 88, § 7;
 
 Cother
 
 v.
 
 Merrick, Hard,
 
 89;
 
 Thomas
 
 v.
 
 Howell, 4 Mod.
 
 69;
 
 Altham’s case,
 
 8
 
 Coke,
 
 154,
 
 b.)
 
 But I do not see that the first proviso of re-entry involves strictly a breach of the covenant to pay rent, on the first day of February; but merely the fact that the rent so reserved, or any part thereof, from any cause, had happened to be behind and remain unpaid for the space of 28 days next after the first day of February, and no sufficient distress is found on the premises at the expiration of this extended time to satisfy it; contemplating a case where no forfeiture of the estate had been incurred by reason of there having been no demand of rent made, on' the first day of February ; and intending to provide for a
 
 forfeiture
 
 at the expiration of the extended time, in the event that the rent remained unpaid at that day, and there should be no sufficient distress to satisfy it. The covenant to pay the rent does not apply to the extended time. If the rent was not paid on the first day of February, it was
 
 then
 
 broken; and whether there was, or not, a sufficient distress on the first day
 
 of
 
 March, cannot affect the plaintiff’s right of re-entry under the
 
 second
 
 proviso for re-entry upon a breach of
 
 either of the covenants.
 
 I therefore think, by a correct construction of the terms of the lease, there is a right of re-entry reserved upon a mere breach of the covenant to pay the rent as reserved, although there is a sufficient distress to be
 
 *147
 
 found on the demised premises, either on the first day of February, or on the last of the 28 days next thereafter.
 

 This brings me to the question made, whether there was a demand of rent made by the plaintiff, as required by the settled rules of the common law, to give the plaintiff a right of entry under the
 
 proviso
 
 for a breach of the covenant to pay the rent as reserved. Where the remedy for breach of covenant to pay, or for non-payment, of rent, is by way of re-entry by a common person, there is but a single exception to the rule of the common law, that there must be an
 
 actual
 
 demand made of the rent previous to the entry; and that occurs where the parties have stipulated in the lease that a ré-entry may be for a default Of payment of rent
 
 without a demand of it.
 
 In
 
 Dormer’s case,
 
 (5
 
 Coke,
 
 40 b,) it was said, “ by special consent of the parties, a re-entry may be for a default of payment of rent without demand of it; and divers other cases were put where consent of the parties shall alter the form and course of the law.” In
 
 Doe
 
 v.
 
 Masters,
 
 (2
 
 Barn & Cress.
 
 489,) where a lease contained a proviso, that if the rent was in arrear for twenty-one days, the lessor might re-enter, “although no legal or formal demand should be made,” it was held, that the rent having been in arrear for the time specified, an ejectment might be maintained without actual re-entry, and without any demand of the rent. And so in
 
 Goodright
 
 v.
 
 Cator, (Doug.
 
 477,) a proviso for re-entry for non-payment of rent, “ although no demand thereof should be lawfully made,” was held to dispense with any demand at all. See also,
 
 Smith
 
 v.
 
 Doe,
 
 (2
 
 Brod. & Bing.
 
 502.) In all other cases where this remedy by re-entry for the non-payment of rent, or for a breach of the covenant to pay rent, is reserved by the lease, and the landlord pursues it under the provisions of the common, law, it is indispensable to his right to re-enter, that he should either in person, or by his agent or attorney duly authorized, ^previously on the
 
 very
 
 day upon which the rent becomes due and payable, at a convenient time before sunset, in which the money may be counted before night, make an actual demand of the
 
 exact
 
 amount of the rent due, at the particular place at which the rent may be made payable by the terms iff the lease; or if there be no place stipulated in the lease,
 
 tí
 
 m
 
 *148
 
 at the most notorious place upon the land- demisea, which if there be a dwelling house, is the front door thereof.
 
 (Arch. L.
 
 &
 
 T. 161; Duppa
 
 v.
 
 Mayo,
 
 1
 
 Saund. Rep.
 
 287;
 
 n.
 
 16;
 
 Co Lit.
 
 202
 
 a; Hill
 
 v.
 
 Grange, Plowd.
 
 172
 
 b;
 
 173
 
 a; Kidwilly
 
 v.
 
 Brand, id.
 
 70
 
 a, b; Clun’s case,
 
 10
 
 Coke,
 
 129
 
 a; Wood
 
 &
 
 Chever’s case,
 
 4
 
 Leon.
 
 180;
 
 Smith & Bustard’s case, 1 id.
 
 142;
 
 Fabian & Windsor’s case, id.
 
 305;
 
 Doe
 
 v.
 
 Wandlass,
 
 7
 
 T. R.
 
 113;
 
 Doe
 
 v.
 
 Paul,
 
 3
 
 Carr & Pay.
 
 613;
 
 Gilbert on Rents,
 
 74, 91, 135.)
 

 The rent reserved by this lease, at least so far as' regards the wheat and hens, by the terms of the grant, is made payable at another place out of the lands demised. In such a case it was formerly held, that where the remedy for the recovery of rent was by way of re-entry for non-payment, there needed no demand, because they looked upon the money, payable off the land, to be in the nature of a sum in gross—which the tenant had at his own peril undertaken to pay.
 
 (Kidwilly
 
 v.
 
 Brand, Plowd.
 
 70
 
 b.)
 
 But this opinion has since been utterly denied by the whole court, in
 
 Borough’s case,
 
 (4
 
 Coke,
 
 73
 
 a ;)
 
 where it was held that the place of payment did not alter or change the nature of the service; but that it remained a
 
 rent
 
 as much as if it had been payable upon the land; and therefore the presumption is, that the tenant was there to pay it, unlesá it be overthrown by the proof of a demand—and without such a demand, and neglect, or refusal thereupon, there is no injury done to the lessor—and consequently the estate of the lessee shall not be defeated or determined.
 

 The demand of rent in this case was not made until the 1st day of March, 1843, which was the last of the twenty-eight days next after the 1st day of February of the same year. It is not denied but that the law requires the demand to be made on the day on which the rent, by the terms of the grant, is made payable, but it is insisted that the time for payment appointed by the
 
 reddendum
 
 clause for the 1st day of February, is extended twenty-eight days next thereafter, by force of the
 
 proviso
 
 for a recovery of the rent by
 
 prosecution or by distress.
 
 It should be remembered, that the remedy by ejectment to enforce the payment of a rent reserved, is never allowed only where a
 
 *149
 
 right of re-entry is expressly stipulated for between the parties to the grant.
 
 (Kenege
 
 v.
 
 Elliott,
 
 9
 
 Watts,
 
 258;
 
 Bacon’s Ab. tit. Rent, K.
 
 4.) That right, as we have already seen, is so stipulated for.
 
 Secondly:
 
 Upon a breach of the covenant to pay the rent as reserved, and not in the event of its being behind and unpaid for the space of twenty-eight days next after the day appointed for the payment, but
 
 upon the day
 
 of the happening .of that event, and that could not happen upon any other day than the 1st day of February, unless the day of payment is postponed or changed to some other day by some stipulation of the parties contained in the lease, which the
 
 proviso
 
 referred to, in regard to prosecution arid distress, does not purport to do. Usually, the clause or proviso for the right of reentry is made to depend upon the fact that the rent shall be behind and unpaid by the space of a given number of days, weeks or months, after the day of payment specified; and not upon a breach of the covenant to pay. In such case, the demand of rent, to entitle the lessor to exercise the' right to reenter, must be made on the last day of the extended time, as that is the legal day for payment, for default of which, demand being made, the right to a forfeiture attaches. (1
 
 Saund. Rep.
 
 287,
 
 n.
 
 16;
 
 Arch. L. & T.
 
 161.) But here, I repeat, the seco ndpror iso for the right of re-entry does not refer to an event, 'to happen
 
 after
 
 the breach of the covenant to pay the rent; and although the proviso for prosecution and distress would have the effect to postpone the right of the lessor to take either of
 
 those
 
 remedies until the expiration of "the 28 days, if such right
 
 depended
 
 upon some stipulation of the parties in the lease; yet it could not, even then, affect the
 
 proviso
 
 of re-entry for breach of covenant to pay the rent—it could only, at most, accomplish the object for which it was inserted. Not to alter the day fixed for the payment of the rent by the
 
 reddendum,
 
 but to confer upon the lessor a right to prosecute or distrain, and to specify the time in a certain event when
 
 such
 
 right might be exercised. The
 
 second
 
 proviso of re-entry, plainly makes the event when the lessor shall be entitled to'
 
 entry,
 
 having made • demand, namely—the time when default shall be-made in pay
 
 *150
 
 ing the rent so fixed by the
 
 reddendum
 
 on the first day of Feb ruary.
 

 Where rent is provided to be paid at a particular day by the
 
 reddendum,
 
 say on the first day of February, “ or within twenty days next thereafter,” the lessee has until the end of the last of these days to pay the rent.
 
 (Clun’s case,
 
 10
 
 Co.
 
 127; 1
 
 Saund.
 
 287,
 
 n.
 
 16.) But this extension of the time beyond the
 
 first day mentioned,
 
 is not usual in the
 
 reddendum,
 
 although very usual in the
 
 proviso
 
 for re-entry for non-payment of rent, or for breach of some covenant; but its being in the latter
 
 only
 
 will not affect the right to distrain or to sue immediately upon the expiration of the time at which the rent is made payable by the
 
 reddendum. (Archibald, L. and T.
 
 111.) And upon the same principle, where there is an extension of the time for the payment of the rent, beyond the time fixed by the
 
 reddendum
 
 only in the
 
 proviso
 
 for prosecution and distress, it will not affect the right to re-enter immediately upon the happening of the event provided for by the
 
 proviso
 
 for re-entry, although that should occur at a prior day.
 

 "On the argument, counsel for the plaintiff seemed to suppose it important to establish the point, that the
 
 proviso
 
 for prosecution and distress
 
 restricted
 
 the right
 
 to
 
 prosecute and
 
 to
 
 dis-train until the expiration of the extended time of twenty-eight days.
 
 It
 
 was said
 
 that
 
 the case of
 
 Hill
 
 v.
 
 Stocking,
 
 (6
 
 Hill
 
 277,) held a contrary doctrine upon a like proviso, but it was insisted that that case rested upon no adjudication, and could not be upheld. But I am of the opinion that the decision in that case is well sustained by the settled rules of law. There is, however, this material difference between that case and this, in respect to the question made upon the
 
 proviso
 
 for prosecution and distress, when considered in reference to the principles of the common law applicable to it. There, the lease was for a term of years reserving rent, and the lessor had a
 
 reversion
 
 in the premises demised, which was strictly a rent-service. In this case, by the terms of the grant, a
 
 fee
 
 is conveyed -reserving a yearly rent, with a
 
 proviso of re-entry
 
 upon condition; therefore the grantor has not strictly a
 
 reversión,
 
 but a remote reversionary interest called a
 
 reverter.
 
 (4
 
 Kent’s Com.
 
 353;
 
 *151
 

 Payne
 
 v. Beal, (4
 
 Denio,
 
 411.) In
 
 Hill
 
 v.
 
 Stocking,
 
 the lease contained a proviso that on the rent being in arrear for twenty days, the lessor might distrain; but the distress was made before that time elapsed. It was held that the lessor having a
 
 reversion,
 
 might distrain of
 
 common right,
 
 and that, immediately on the rent falling due; that as the
 
 proviso
 
 contained no negative words, it did not restrict the right; and that although such proviso' had been very common in leases from the earliest times, it had been deemed to be entirely nugatory in case of a
 
 rent service
 
 ever since the time of Littleton ; and it was said, that the clause would doubtless be deemed equally nugatory in respect to rent-charge and rent-seck since 1
 
 R. S.
 
 738,
 
 2d ed.
 
 § 18, had, in respect to the right of distress! put all rents on, the same footing.
 

 There were at common law, according to
 
 Littleton,
 
 § 213 ; 3
 
 Kent’s Com. 5th ed.
 
 460, three kinds of rent,
 
 namely—rent service, rent charge
 
 and
 
 rent seek.
 
 Rent service was where the tenant held his land by fealty and certain rent, or by a certain rent, together with homage, fealty or other services. It was called
 
 rent service,
 
 because it had some corporal service, as fealty at least, belonging to it; and to this rent, distress was incident, provided that the
 
 reversion
 
 were in the landlord or lessor making the distress.
 
 (Litt.
 
 § 215;
 
 Co. Litt.
 
 142,
 
 a; Kemge
 
 v.
 
 Elliot,
 
 9
 
 Watts,
 
 258;
 
 Cornell
 
 v.
 
 Lamb,
 
 2
 
 Cowen,
 
 652;
 
 Bradby on Distresses, ch. 2, p.
 
 14.)
 
 Rent charge
 
 was where a man being seized of lands, made a gift in tail by deed indented, or by deed poll, the remainder over in fee, or a lease for life, with such remainder over ; or a feoffment in fee ; and by the same deed, reserved to himself and his heirs a certain rent; and that if the rent should be unpaid; he and his heirs might distrain; or where being so seized, he granted a rent in fee or for life out of the lands, with a power to the grantee to distrain. Rent so reserved or granted was a
 
 rent charge,
 
 because the lands were charged with such distress by force of the deed only, and not of
 
 common right.
 
 Rent seek was where a man had granted a rent by deed without a clause of distress; and for this rent, if in arrear, there was no distress at the common law. These .distinctions, between the different kinds oí
 
 *152
 
 rent, remained until they were finally abolished by the statute, (4
 
 Geo. 2, ch.
 
 28, § 5,) by which it was enacted, that there should bé the like remedy by distress, in cases of rents seek, rents of assise, and chief rents, as in the case of rents reserved upon a lease.
 
 (Bradby on Distresses, p. 23;
 
 3
 
 Kent’s Com. 5th ed.
 
 461.) That statute, however, was not enacted in-this state, and the right of distress has been considered as essentially remaining in this state, as at common law, until 2
 
 R. S.
 
 747, § 18, gave the remedy by distress, in all cases where any certain services or certain rent reserved out of any lands or tenements shall not be paid or rendered when due.
 
 (Smith
 
 v.
 
 Colson,
 
 10
 
 John. R.
 
 91;
 
 Cornell v. Lamb, 2 Comen’s R. 652;
 
 3
 
 R. S.
 
 600,
 
 Revisers’ Notes ;
 
 3
 
 Kent’s Com.
 
 461,
 
 n. b, 5th ed)
 

 If therefore the rent reserved in this lease was not a
 
 rent service
 
 at the common law, there would have been no right to recover it, in case of its being in arrear, by distress, unless such right was. provided for by the terms of the lease or grant. The
 
 proviso
 
 for distress in this lease was, no doubt, inserted upon the supposition that it was not that kind of rent. And in that on-e the provision would have been operative, at least at the time it was made, and the lessor could not rightfully have exercised the right of distress, but in conformity with the proviso. A power to distrain for a
 
 rent service
 
 was never necessary to be provided for by the parties ; it was incident to that rent and of
 
 common right.
 
 But for a rent, created by deed, where the
 
 fee
 
 was granted, it required an express power of distress to be annexed to the grant. Therefore where the grantor or-lessor had the right, as he had in all cases of a
 
 rent service,
 
 before our statute extended the right of distress to all certain rents, to prosecute and to distrain irrespective of the power given him by a
 
 proviso,
 
 there being no
 
 negative
 
 words
 
 restricting
 
 that right, it would not operate to -
 
 restrict
 
 the right which existed without. it. The true construction of ;such
 
 proviso,
 
 would be to consider it as introduced in furtherance of the right which the lessor had under the law; and not as taking away any right existing without it.
 
 (Doe
 
 v.
 
 Wilson, 5 Barn.
 
 &
 
 Adol.
 
 363.)
 

 But it cannot be material to the decision in this case, what
 
 *153
 
 effect
 
 that
 
 proviso has upon the power it undertakes to give; as in no respect, in my view of the case, does it affect th« question arising upon the proviso of re-entry for breach of the covenant to pay rent. That right of
 
 entry
 
 is independent of the proviso for distress; and may well be perfect at a day anterior or subsequent to the day, when the right to distrain or of reentry for want of sufficient distress, should become so; it depends wholly upon the contract of the parties. My opinion therefore is, that the demand of rent was too late to sustain an entry under the
 
 second
 
 proviso of re-entry for breach of covenant, and that it should have been made on the first day of February; that being the day of payment appointed by the
 
 reddendum
 
 in the grant, and when, if at all, the covenant was broken for default of payment. The fact that there were two tenants on the demised premises, as alienees of the grantee, holding different parts in severalty, did not alter the grantor’s duty, in respect to making the demand of the amount of fhe rent due for the year.
 

 The judgment must be affirmed.
 

 Judgment affirmed.1