## EMMA E. SAMSON, Appellant, v. J. MICHAEL ROSE, Respondent.

One whose estate is terminated by his own act or default is not entitled to emblements.

Where, during the pendency of an action of ejectment, brought by a lessor against a lessee, under a condition of the lease giving a right to re-enter in case of non-payment of rent, the lessee sublets to another, who, with full knowledge of the facts, puts in a crop upon the land, which is harvested, but not removed therefrom at the time the lessor is put into possession under and by virtue of the judgment in the ejectment suit, the crop belongs to the lessor. (REYNOLDS and EARL, CC., dissenting.)

As by the Revised Statutes (2 R. S., 505, § 30) the commencement of an action of ejectment for non-payment of rent is made equivalent to a re-entry, the lessor is conclusively presumed to have taken possession at the time of service of the complaint, and the tenant, if he remains, is assumed to hold in some manner consistent with plaintiff's paramount right of possession, and when the latter takes possession at the termination of the action such possession relates back to its commencement. (REYNOLDS and EARL, CC., dissenting.)

Any crops, therefore, put in by the tenant, or a subtenant, having notice, subsequent to the commencement of the action, belong to the plaintiff. (REYNOLDS and EARL, CC., dissenting.)

*Stockwell* v. *Phelps* (34 N. Y., 363) distinguished.

The complaint, in an action of ejectment brought by a lessor, did not state that it was brought as a matter of re-entry for non-payment of rent, but simply alleged title in plaintiff and wrongful possession and claim by defendant. The latter, in his answer, set up and claimed under the lease, and it was conceded that the lease was a subsisting one at the time of the commencement of the action. In an action of replevin brought by the lessor to recover a quantity of grain raised upon the demised premises, *held* (REYNOLDS and EARL, CC., dissenting), that it was to be presumed that the action of ejectment was brought upon the condition of re-entry in the lease, and that the principles above stated as to the rights of the parties to the crops applied.

In the action of replevin it appeared that defendant had mixed other grain of his own, with that claimed by plaintiff. Defendant stated when the grain was taken by the sheriff that it was all raised on plaintiff's land. *Held*, that the case was simply one of confusion of goods, and as the grain could not be separated, defendant could not thus by his own act defeat the action, but must bear the loss resulting therefrom.

(Argued September 30, 1874; decided May term, 1875.)

APPEAL from order of the General Term of the Supreme Court of the third judicial department, setting aside a verdict in favor of plaintiff and granting a new trial.

This action was brought to recover possession of 109 bushels of buckwheat, one mowing machine, one drag and a lot of straw. The principal question in the case, was, as to the title to the buckwheat and straw. It appeared on the trial, that the plaintiff was the owner of a farm situated in the town of Lincklaen, in Chenango county. On the 13th day of January, 1869, she made a lease of it, and the stock and farming utensils, etc., for the term of five years, for an annual rent to be paid on the thirteenth day of January, in each and every year thereafter. The lessees were Joseph G. Tripp, Henry M. Tripp and A. P. Green, who covenanted to pay the rent. There was a clause authorizing re-entry by the grantor in case the rent was not paid. The Tripps entered into possession and cultivated the farm in 1869. They did not pay the rent falling due in January, 1870. On March twentieth, thereafter, an action of ejectment was brought against them to recover possession of the premises leased. The complaint set forth title in plaintiff, and wrongful possession and claim by defendant. Defendant in his answer set up the lease, and claimed under it. The lease was not questioned on the trial. A verdict was recovered in favor of plaintiff, and judgment having been entered thereon, she was put in possession on the twenty-third day of that month. In the summer of 1870, during the pendency of the ejectment, the lessees sublet to the defendant herein. The buckwheat in litigation was grown on the farm by defendant, and was raised from seed sown after the commencement of the ejectment proceedings. It was cut prior to but removed by the defendant from the farm the day after the sheriff put the plaintiff in possession. The defendant had been informed by the plaintiff before the buckwheat was sown that the action of ejectment was pending, and that he had "better keep away, better not mix in," unless he wanted to work for the plaintiff's benefit.

The defendant claimed on the trial that there were sixteen bushels of buckwheat (parcel of the 109 bushels), which did not grow on the plaintiff's land. The defendant told the sheriff when he took possession of the buckwheat under process herein, that the 109 bushels were all grown on the plaintiff's farm. On the trial, he testified that he put into the bin where this buckwheat was placed, sixteen other bushels grown on another farm, and that it was all mixed together. At the close of the trial, the defendant asked the court to instruct the jury that the sixteen bushels of buckwheat raised upon the defendant's own farm, above referred to, could not be taken by the sheriff, in lieu of that raised on the plaintiff's premises. The court refused to so instruct the jury for the reason that the defendant had mixed that buckwheat with other buckwheat which he had taken from the plaintiff's farm.

To this ruling and decision the defendant excepted.

In regard to the mowing machine and drag, the following facts were disclosed : They were leased with the farm to the Tripps. Rose had taken them away to his own farm, and the plaintiff could not ascertain from him where they were until the sheriff seized them, finding the mowing machine in Rose's stable partly covered up. When these articles were taken, Rose said that he did not make any claim to them.

There were certain other requests made by the defendant to the judge to charge, which were refused under exception. These are referred to, as far as they are material, in the opinion. The jury, under the direction of the court, found a verdict as follows: They found for the plaintiff that he is the owner and entitled to the possession of 109 bushels of buckwheat, of the value of $100 ; of the mowing machine, of the value of forty dollars ; of the drag, of the value of eight dollars, and of the straw, of the value of ten dollars, with damages (six cents) for wrongful detention. To this direction the defendant excepted.

Exceptions were ordered to be heard in the first instance at General Term.

*Charles Mason* for the appellant. Where a lease is terminated by the act or default of the lessee, the emblements pass and belong to the lessor. (2 Black. Com., 145, 306 [m. p.] ; Taylor's L. and T., § 538 ; Woodfall's L. and T., 238–240 ; 1 Washb. on R. P., 120, §§ 8, 11, 15, 121, 122 ; *Whitmarsh* v. *Cutting*, 10 J. R., 360 ; *Bain* v. *Clark*, id., 424 ; Doug., 206 ; *Stewart* v. *Doughty*, 9 J. R., 108.) One who recovers land in an action of ejectment is entitled to the crops planted after the commencement of the ejectment suit. (*McLean* v. *Bovee*, 1 Am. R., 185 ; *Upton* v. *Wetherswecke*, 3 Bing., 11 ; *Hudson* v. *Gascoigne*, 5 B. & A., 88 ; 2 Wis., 295 ; *Jackson* v. *Stone*, 13 J. R., 447.) The judgment in the ejectment suit was properly received in evidence against defendant and was conclusive upon the question of title and plaintiff's right of possession, and established the fact that defendant was a trespasser while sowing and reaping the crop. (*Doe* v. *Whitcomb*, 8 Bing., 46 ; 21 E. C. L., 216 ; *Jackson* v. *Stone*, 13 J. R., 448 ; 2 C. & P., 615 ; *Dodwell* v. *Gibbs*, 12 E. C. L., 289.) No error was committed by the judge in refusing to charge that the sixteen bushels raised on defendant's farm could not be taken in lieu of the buckwheat raised on plaintiff's premises. (*Frost* v. *Willard*, 9 Barb., 440, 441 ; 1 Str., 55 ; *Dart* v. *Ten Eyck*, 2 J. Ch., 62, 108 ; *Roths* v. *Welles*, 29 N. Y., 471, 472, 486.) As both parties claimed on the trial that there was no question for the jury, defendant cannot now claim that there were questions which should have been submitted to the jury. (*Barnes* v. *Perine*, 2 Kern., 18 ; *Winchell* v. *Hicks*, 18 N. Y., 558.) No demand was necessary before suit. (*Pierce* v. *Van Dyke*, 6 Hill, 613 ; *Cummings* v. *Vorce*, 3 id., 282 ; *Stillman* v. *Squire*, 1 Den., 327.) When plaintiff was put in possession by the sheriff such re-entry by relation revested the property in him as well for the emblements as the freehold. (10 Coke 51 ; Dyer 31 ; 19 Wend., 509 ; *Lane* v. *King*, 8 id., 586 ; *Schermerhorn* v. *Buell*, 4 Den., 425 ; 3 Black. Com., 210.) Plaintiff could have maintained an action of trespass *de bonis asportatis* for carrying away and converting the buckwheat,

without violating any legal principle. (4 Den., 425; *Stock-well* v. *Phelps*, 34 N. Y., 366.)

*Samuel Hand* for the respondent. Plaintiff could not maintain an action of replevin for the grain raised by defendant on the leased farm. (3 Black. Com., 10; 3 Kent Com. [9th ed.], 477; Taylor's L. and T., §§ 578, 749; *De Mott* v. *Hagerman*, 8 Cow., 220; *McCurdy* v. *Brown*, 1 Duer, 101; *Dodworth* v. *Jones*, 4 id., 201; *Rich* v. *Baker*, 3 Den., 79; *Stockwell* v. *Phelps*, 34 N. Y., 364, 366; *Van Etten* v. *Currier*, 3 Keyes, 331, 333; *Harris* v. *Frink*, 49 N. Y., 24.) The clause in the lease giving plaintiff a lien for the payment of the rent, on " all the goods, wares, chattels, implements, fixtures, tools and other personal property which are or may be put on the demised premises," does not reach the crops raised and carried away by defendant. (*Milliman* v. *Neher*, 20 Barb., 37; *Buskirk* v. *Cleveland*, 41 id., 610; *Van Hoozer* v. *Cory*, 34 id., 15.)

DWIGHT, C. The leading question in controversy in this cause concerns the ownership of the buckwheat and straw. That depends upon the answer to be given to the following inquiry: When an owner of land makes a lease, reserving rent with a condition of re-entry in case of non-payment, and the rent is not paid, and an action of ejectment is brought against the tenant by the landlord to enforce the condition of re-entry, and during the pendency of this action the tenant sublets to another, who has full knowledge of the facts, and that person sows a crop, which is harvested, but not removed from the premises, when the sheriff delivers possession to the landlord, in the action of ejectment, who owns the crop, the landlord or the sublessee? The most satisfactory mode of viewing this subject will be to consider what would have been the rights of the lessees, the Tripps, in case they had sown a crop after the action of ejectment; and then to ascertain whether the position of the defendant, in any respect, differs from theirs.

The rights of the lessees, had they been in possession when the action of ejectment terminated, would have been governed by the law of emblements. It is a perfectly well-settled rule, that a tenant has no right to emblements when his lease is terminated by a paramount title, wholly subverting his own. For example, where, on the foreclosure of a mortgage, the mortgagee enters by force of a superior title, whatever crops are then growing upon the land, whether planted by the mortgagor or by a lessee taking his lease in subordination to the mortgage, pass to the purchaser at the foreclosure sale. (*Shephard* v. *Philbrick*, 2 Denio, 174.) This doctrine would have been plainly applicable to the lessees in the present case, had the crop been growing upon the land when the plaintiff took possession. An entry for condition broken would have defeated the estate of the Tripps *ab initio*, and would have transferred the growing crops to the plaintiff. The lessees would have had no equitable claim to emblements, as the termination of the estate would have resulted *from their own act* in not making payment of the rent. The whole law of emblements is derived from a rule of public policy. Its object was to encourage agriculture, by giving to such tenants as held a possession terminable upon some uncertain event, a return for the capital and labor laid out and expended upon the land of another. There is no color for the view that any such allowance can be made in favor of one who has a fixed term, or whose estate terminates (though indefinite in its original duration) by his own act. Thus, if an estate be given during widowhood, and the tenant marry while a crop is growing, she is not entitled to emblements.

It may, however, be claimed that this doctrine only terminates the lease at the time of actual entry on the part of the landlord, and accordingly, that all crops harvested after the act of forfeiture but before re-entry by the landlord, have been so completely severed from the soil, that he can make no claim to them. It will be urged on this view that, as in the present case, the crops were severed from the land before

the landlord took possession of it, he had no title, and was driven to his claim for *mesne profits,* according to the ordinary practice in ejectment proceedings.

To meet this objection, it is necessary to consider the nature of an action of ejectment for *condition broken* in a lease or other conveyance. The old method of resuming possession on condition broken was by an actual entry of the grantor or his heirs upon the land. This was found to be practically inconvenient and statutory substitutes were resorted to. The Revised Statutes provide that, "whenever a half year's rent or more is due, * * * if the landlord has a subsisting right by law to re-enter for the non-payment of rent, he may bring an action of ejectment for the recovery of the possession of the demised premises, and the service of the declaration shall be deemed and stand instead of the demand of the rent in arrear and *of a re-entry* on the demised premises." (2 R. S., 505, § 30.)

In the lease in controversy in the present case, there was an express agreement that the landlord might re-enter for non-payment of rent. If there had been an actual re-entry for condition broken at the time when the action of ejectment was brought, the title of the Tripps would have been defeated *ab initio,* and the land, with all its accretions, would have been vested in the plaintiff. As the commencement of the action is made, by the above cited statute, equivalent to a re-entry, the landlord must be conclusively presumed to have taken possession at the moment of the service of the complaint in this action. The lessees, if still there, could not be assumed to hold adversely, but rather, in some manner, consistent with the paramount right of possession of the plaintiffs. They might be assumed to be her bailiffs or servants. When the landlord actually took possession at the termination of the action, it would relate back to its commencement. The effect of an entry by a lessor, where he may lawfully make it for a breach of condition, is to determine the estate of the tenant altogether, and wholly revest the same in the lessor or his assigns. The property is held on the same conditions as if

the estate to which the condition was annexed had not been granted. (2 Wash. on Real Prop., 11 parag., 13, and cases cited [3d ed.] ; 2 Cruise Dig., 36 [Greenlf. ed.].)

The result of this discussion is, that had the lessees been in possession when the action was brought, any crops subsequently sown before its termination would have vested in the plaintiff.

The defendant is in no better position than his lessors would have occupied had they remained owners. It is undoubtedly true that a sublessee is frequently in a better position in respect to emblements than the original lessee. Any distinctions, however, between their rights in this respect, rests upon the rule of public policy already alluded to. If, for example, a lessee, having made an underlease, terminates his estate by his own act, he would have no emblements, though the underlessee would be allowed them. Accordingly, it has been laid down that if a tenant for years, whose lease depends on a certain condition, underlets the land, and his underlessee sows corn, and afterwards the first tenant breaks the condition, and so forfeits the lease, by means of which they are all ousted, the undertenant is, nevertheless, allowed to enter and cut the corn when it is ripe. (*Oland* v. *Burdwick,* Cro. Eliz., 46 ; *Bevans* v. *Briscoe,* 4 Har. & Johns., 149 ; Taylor on Landlord and Tenant, § 536.)

The condition having been broken after the underlease was made, it was reasonable in these cases that emblements should be allowed, as the underlessee had no reason when he took the premises to anticipate the special mode by which the lease was terminated, and to which his own act in no respect contributed.

In the case at bar, there was no uncertainty when the sublessee's interest would terminate, except that which is necessarily involved in the progress of a law suit. The defendant, before his crops were planted, was well aware of the risk he ran. Having chosen to assume it, he cannot complain of the consequences. The recovery in ejectment is conclusive against him, as he derives all his title from the defendants in that action. (*Jackson* v. *Stone,* 13 J. R., 447.)

*Stockwell* v. *Phelps* (34 N. Y., 363) does not govern the present case. There a party in ejectment claimed to hold adversely to the plaintiff, and, during the adverse possession, hay, produce of the premises, was sold. It was decided that the plaintiff could not, on his recovery, claim the hay, but was driven to his action for *mesne profits*. In the present case there is no adverse holding. A landlord is resuming possession for condition broken, under a statute which declares the commencement of his action equivalent to a re-entry at common law.

It is, however, objected that there is no clear proof that the present action is brought as a matter of re-entry for the non-payment of rent. It is a simple action of ejectment, setting forth, in the general manner permitted by the Revised Statutes, the title of the plaintiff in fee simple, and a wrongful possession and claim by the defendant. It is urged that this action is perfectly consistent with an ordinary case of adverse holding by the defendant. The answer to this view is, that it was admitted on all hands that at the time of the commencement of the action, there was a lease subsisting between the plaintiff and the Tripps, lessees of the defendant. This lease the defendant sets up in his answer and relies upon it as being still a ground upon which he can defeat the plaintiff's action. It would not be consistent with the plaintiff's duties as lessor to have brought the present action on any other ground than that of the forfeiture of the lease itself. It was an instrument under seal, and the plaintiff would have been estopped from making any claim to the property inconsistent with the relation of landlord and tenant. It is unnecessary to cite authorities to establish a principle so elementary and so familiar. The action, therefore, according to all ordinary presumptions, *must* have been brought upon some condition of re-entry in the lease itself, and, accordingly, the principles discussed in this opinion must be deemed to be applicable.

The rules followed in this case are fully sustained by the authorities. In *Hodson* v. *Gascoigne* (5 Barn. and Ald., 88), an action of ejectment was brought against A, by his landlord.

there being rent in arrear. The date of the declaration was December 5, 1815; the judgment was rendered July 1, 1816. There were then crops growing on the land. The court said that after the judgment was obtained in ejectment, the defendant was a trespasser from the day of the demise laid in the declaration (December fifteenth). The property was from that time divested out of him, and he had no property at the time when the execution was delivered to the sheriff. It was further said that the landlord might, in an appropriate action, have recovered the value of all the crops. TINDAL, *arguendo*, for the plaintiff, said: " The judgment in ejectment is that the plaintiff recover his time against the defendant of and in the premises aforesaid. The writ orders the sheriff, *quod habere facias possessionem.* This can only bind from the time of the execution of the writ, for in an action for *mesne profits*, the course is to give damages up to the time of the execution of the writ. It cannot have any retrospective power so as to take away any right vested in a purchaser of the crops. Suppose, for example, the tenant has sold the crops to a purchaser, and after the sale the sheriff entered under the *habere facias*, etc., would the landlord in that case have been entitled to the growing crops?" BAYLEY, J., replied, " I think that he would, if the sale took place subsequently to the day of the demise laid in the declaration of ejectment, for, from that time, the tenant must be considered as a wrong-doer."

The principle is thus stated in Adams on Ejectment (416, 4th ed.): " When the sheriff delivers possession of the land under the writ of *habere facias possessionem* he thereby also delivers possession of the crops upon it, and such crops will pass to the lessor although severed at the time of the execution of the writ, provided such severance has been made subsequently to the determination of the tenant's interest, and of the day of the demise in the declaration (citing *Doe* v. *Witherwick*), and the growing crops will also pass to the lessor by the execution of the writ of possession, although previously siezed under a *fieri facias* against the tenant, if the day of the demise in the declaration be prior to the issuing

of such *fieri facias,* inasmuch as they cannot be said to belong to one who is a trespasser from that day." The same rule is stated in Tyler on Ejectment, 590.

In the case of *Doe* v. *Witherwick,* referred to by Mr. Adams, the facts were, that the defendant was a lessee, and his term having expired on the 6th of April, 1824, and having refused to quit, the lessors of the plaintiff in an action of ejectment were put in possession under an *habere facias,* etc., in the ensuing August, at which time some grass crops were lying on the ground, together with nine acres of oats, which the defendant had recently severed, and the plaintiff was put in possession of these also. PARK, J., said, that as the tenancy expired in April, though the writ of possession was not executed till the month of August following, during that intermediate period he was clearly a trespasser. GAZELEE, J., said, that the defendant ought to have quitted on the expiration of his term, and the plaintiffs are entitled to the *mesne profits,* from that time till the writ of possession was executed. (10 J. B. Moore, 267.) In the same case, as reported in 3 Bingham, 11, it is stated that the court were of opinion that the defendant had no merits.

The objection that there were sixteen bushels of other grain mixed with that belonging to the plaintiff, and that therefore the action will not lie, has no force. At most, it only presents a case of confusion. The court cannot undertake to separate from the mass, the grain belonging to the defendant. If he cannot do so, the loss results from his own act.

The other points in the case require no special consideration. As to the farming utensils belonging to the plaintiff, and removed without just cause by the defendant, there was evidence of such an act of ownership by the latter as to justify the plaintiff in including them in the litigation. The subsequent disclaimer of title by the defendant would not subvert a cause of action that had once vested in the plaintiff.

The order of the General Term should be reversed, and judgment ordered for the plaintiff on verdict.

REYNOLDS, C. (dissenting).    When the buckwheat in controversy in this action was sown and harvested, the plaintiff was not in the actual possession of the premises upon which it was grown, but the farm was in the actual possession of her tenants, claiming under a lease for five years from the 13th day of January, 1869, at a rent of $896, payable annually, with a privilege for the tenants to purchase for $12,800, upon terms specially stated in the lease.    The evidence tended to show that default was made in the payment of the annual rent due on the 13th day of January, 1870, and some time thereafter the plaintiff commenced an action of ejectment against her tenants, which was contested and resulted in her favor, and on the 23d of September, 1870, she was put in possession of the premises by the sheriff of the county of Chenango. The record in the ejectment suits does not show the exact time the action was commenced, nor that it was brought for the non-payment of rent.    The complaint in that action was very general, and averred that the plaintiff then was, and for ten years last past had been, the owner of the premises in fee simple, and that the defendants, Tripp and others, were wrongfully in the possession thereof, and wrongfully withhold the possession thereof and refuse to surrender the same to the plaintiff.    The answers denied the complaint and alleged that they were lawfully in possession of the premises under a lease from the plaintiff, with the privilege of purchasing, the terms of which, as they alleged, had been fully kept and performed.    The trial, as before stated, resulted in favor of the plaintiff, and she was put into possession by due process of law.    When the buckwheat was taken, in the present action, it had been harvested and threshed, and a portion of it, as appears by the evidence, to have been removed on the day the sheriff executed the writ of possession in favor of the plaintiff and the residue on the day following.    For the purpose of presenting the principal question which I propose in the first place to discuss, it is sufficient to say, that the learned justice before whom the case was tried at the Circuit, at the close of the evidence decided, that according to the

record in the ejectment suit, the lease was forfeited before the defendant went upon the farm and sowed the buckwheat, and also shows that the plaintiff was entitled to the products raised upon the farm during the spring and summer of 1870, and so instructed the jury, under the exception of the defendant.

I think it entirely accurate to say, that the judgment record in the ejectment suit, upon which the plaintiff's right was wholly made to depend, shows no such fact as was announced by the learned judge in disposing of the case at the Circuit, and does not show any other reason for the recovery than that the legal title was in the plaintiff when the suit was commenced, and that the defendants were wrongfully in possession, and it may be added that there is no evidence connecting the judgment in ejectment with any default in the payment of rent, except the proof that the rent was not paid and that the plaintiff went into possession for the non-payment, when the documentary evidence shows that she went in by virtue of legal process upon a judgment which does not declare whether it was recovered on account of default in the non-payment or otherwise. It seems to have been assumed that the recovery in ejectment was had for the non-payment of the annual rent reserved by the lease, which became due on the 13th of January, 1870, and for the present, I shall consider the case upon that assumption. During the pendency of the ejectment suit, and during the summer of 1870, the defendant, by permission of the tenants in possession and as subtenant, sowed and harvested the buckwheat in controversy.

In order to solve the present question it is necessary to consider the respective rights of landlord and tenant in respect to what the law terms *emblements*, or the profits of a crop, which the tenant has sown or planted, and the doctrine is somewhat ancient in its origin and was borrowed from the feudal law (2 Bl. Com., 123), and it is perhaps now sufficiently well settled that, to entitle a tenant or his executors to emblements, the estate or interest which he has must be uncertain in duration,

for if he knows before he plants his crop that his estate or interest will terminate before it can be gathered, his successor will take it. (1 Washb. on Real Prop., 103.) The principle upon which the law giving emblements is founded, is that the tenant should be encouraged to cultivate by being reasonably sure of receiving the fruits of his labor, but the tenant was entitled to that species of product only which grows by the industry and manurance of man, and to one crop only of that product; but the rule does not extend so far as to give the tenant *all* the fruits of his labor, for in such case the right might be extended to things of a more permanent nature, as trees, or to more crops than one, for the cultivator of the soil very often looks for a compensation for his capital and labor in the produce of successive years. (*Graves* v. *Weed*, 5 Barn. & Adol., 105.) In 1 Coke upon Littleton, by Thomas (p. 736), Littleton says (§ 68): "If the lessee soweth the land, and the lessor, after it is sown, and before the corn is ripe, puts him out, yet the lessee shall have the corn, and shall have free entry, egress and regress to cut and carry away the corn, because he knew not at what time the lessor would enter upon him. Otherwise it is, if tenant for years, which knoweth the end of his term doth sow the land, and his term endeth before the corn is ripe. In this case the lessor, or he in reversion, shall have the corn, because the lessee knew the certainty of his term and when it would end." Lord COKE, in his commentary on the passage above quoted, says: "The reason of this is that the estate of the lessee is uncertain, and therefore, lest the ground should be unmanured, which should be hurtful to the commonwealth, he shall reap the crop which he sowed in peace, albeit the lessor doth determine his will before it be ripe. And so it is if he set roots, or sow hemp or flax or any other annual profits; if, after the same be planted the lessor oust the lessee, or if the lessee dieth, yet he or his executors shall have that year's crop. But if he plant young fruit-trees or young oaks, ash, elms, etc., or sow the ground with acorns, etc., then the lessor may put him out, notwithstanding, because they will yield no present

annual profit." But the learned commentator also adds: "If the lessee, at will, sow the ground with corn, etc., and after he, himself, determine his will, and refuseth to occupy the ground, in that case the lessor shall have the corn, because he looseth his rent. * * * But when the estate of the lessee being uncertain is defeasible, by right paramount, or if the lease determine by act of the lessee, as by forfeiture, condition, etc., then he that hath the right paramount, or that *entereth* for any forfeiture, etc., shall have the corn."

These general principles of the law of emblements have, so far as I have discovered, been adopted by the courts of this country, and appear to be quite conclusive in favor of the title of the defendant to the buckwheat, unless an exception is to be made because, in this case, the lease was for a certain term of years, or unless the judgment in ejectment had the effect of transferring the title to the crop after it had been sown or harvested, from the defendant to the plaintiff.

Although, in this case, the lease was for a certain term of years, it is very apparent no objection could be made to the defendant's right to the buckwheat but for the recovery in the action of ejectment, for if no default had been made, the term would not have ended until the 13th of January, 1874. It does not appear that the defendant knew the character of the suit pending between the plaintiff and her tenant, and it is, perhaps, not material whether he did or not, but if he did he must have known that both parties claimed the right to the possession of the property when he sowed the buckwheat, and that there must be a trial of the controversy at some future day before a court and jury, and that in any aspect, the plaintiff could not recover the possession until that trial had been had and a result reached. It was not; therefore, unreasonable for him to suppose that the termination of that litigation was so uncertain as to time, and possibly as to results, that he might not only sow, but reap the crop in peace before it was determined where the possession of the premises rightfully belonged. When it is said that the law of emblements has no application to a case of tenancy for years, it means only that if it is

apparent that the tenancy will certainly terminate before the crop can be gathered, the tenant will lose the fruits of his labor. (*Whitemarsh* v. *Cutting*, 10 J. R., 360; *Bain* v. *Clark*, id., 427.) But even in such a case the rule has been relaxed in favor of undertenants, where the tenancy of years was terminated for breach of condition committed by the first tenant. (Taylor's Landl. and Ten., § 536; *Doe* v. *Wetherill*, 3 Bing., 11; *Bevans* v. *Brescoe*, 4 H. & J., 139; *Oland* v. *Burd-wick*, Cro. Eliz., 46.) It appears to be very clear that the same reason exists for giving emblements to a tenant for years, as to a tenant for life (or his executor), or at will, where the estate is terminated by the happening of some uncertain event before the full end of the term, and such, so far as the defendant is concerned, is the present case.

It has been seen that the plaintiff, at the Circuit, recovered the buckwheat solely by the legal force of the judgment record in ejectment, and the decision cannot be supported upon any thing else that appears in the case. When the crop was sown and gathered, the plaintiff was not in possession of the premises, but had commenced an action against her lessees to recover it, and the action was pending, and the defendant was in the actual possession for the cultivation of the crop, under an arrangement with the defendants in the ejectment suit, who were resisting the plaintiff's claim. In this condition of things the title to the buckwheat was in the defendant, at least until the termination of the proceedings in ejectment, and could have been seized and sold by a creditor upon an execution against him.

If there had been an actual entry by the plaintiff before the crop was sown, no question in respect to the plaintiff's right could arise, and perhaps an actual entry by title paramount while the crop was growing would have terminated all the rights of the defendant. (*Davis* v. *Eyton*, 7 Bing., 154.) In the case cited the landlord re-entered for condition broken, on the eleventh of May, while crops planted by the tenant were growing, and took possession, and afterwards harvested and sold them; and upon trespass brought by the assignees of

the tenant, who had become bankrupt, the landlord was held entitled to the crops. There can be no reasonable doubt but that after actual entry by the landlord for non-payment of rent, or other condition broken so that he is again actually vested with his former estate, that the crops then growing belong to him, and he may take and gather them. But to give in this case the effect which was given to the judgment record at the Circuit, we must hold that the actual possession given to the plaintiff by the sheriff on the 23d of September, 1870, instantly ran back to the day of the commencement of the suit, and diverted the title to all crops planted, gathered and removed in the meantime by tenants in actual possession under a claim of right, and that trespass or replevin may be maintained for them wheresoever or in whosesoever possession they may be found, and this is in fact the claim of the plaintiff; but it does not appear to be sustained by the authorities cited, nor do we think any such authority can be found in the books.

The general rule, doubtless, is, that a recovery in ejectment, as far as respects the right to *mesne profits*, is conclusive of the title as to the *land* possessed by the defendant when this action was brought. (*Jackson* v. *Stone*, 13 J. R., 447.) So a disseizor gets no title as against the true owner to property which he wrongfully severs from the freehold and carries away (*Morgan* v. *Varick*, 8 Wend., 587), and he may be pursued in trespass after the owner has regained possession of his estate. But where the entry was in the first instance lawful, as in the case of a tenant who plants and harvests an annual crop before the estate is determined by the actual re-entry of the landlord, the question as to whom the crop belongs assumes a very different aspect, and depends upon different considerations. If the crop be growing at the time of re-entry, we have seen that the landlord may gather it, and he may be entitled to grass, if cut, or to trees which have been felled; and if the re-entry be by action of ejectment, the judgment establishes his right to *mesne profits* from the commencement of the suit, but does not give him title to crops raised by

annual cultivation and labor, which have been planted and gathered by a tenant in actual possession between the commencement and the termination of the suit.

But to give the record in the ejectment suit any force whatever in respect to the title to the buckwheat, it should at least show that the defendant recovered for a default in the payment of rent happening before the commencement of the suit, and this it does not show, but rather that the plaintiff recovered in repudiation of any relation of landlord and tenant, for in that action the defendants set up the lease of 1869 in defence of their possession, and averred that they had fulfilled all its conditions, and fully paid and satisfied the rent. It is therefore just as probable, so far as it is proved by the judgment record, that the pretended lease was a forgery as that there was any default in the payment of rent upon which the recovery was grounded. It cannot be that a general recovery in ejectment, after an animated controversy of many years, has such relation back to the commencement of the action that, *per se*, the title to all the crops raised by the defendant during the litigation is instantly changed, and that the plaintiff, being put in possession, may abandon his claim to *mesne profits*, and bring trespass or replevin for the crops ; and, indeed, the very proposition that in such case the defendant is liable for *mesne profits* is founded upon the supposition that while in possession, which although determined by the judgment to have been wrongful, he, in some form, made that possession profitable to himself. The result, so far, appears to be that if the entry for which the recovery in ejectment is had was originally wrongful, and the wrong-doer has severed and carried away property from the premises, the plaintiff, on regaining possession, may have his action, not only for the trespass, but for the property thus taken away. And in the case of landlord and tenant, if a lawful entry be made for condition broken, the landlord may have all crops standing and growing at the time he is revested with his former estate.

It has been suggested that upon the foreclosure of a mort-

gage, and a purchase by the mortgagee at the sale, he is enti-
tled to the crops growing at the time of the sale; and that a
landlord re-entering for condition broken is in the same con-
dition as to his right to growing crops at the time of re-entry.
To this we may fully assent, for we do not doubt but that
crops growing at the time of an actual re-entry by a landlord
belong to him. If they, prior to that time, have been sev-
ered and removed by a tenant in actual possession, a different
question arises. We have seen, also, that there is a manifest
distinction in this respect between the case of an entry origin-
ally lawful or the entry of a disseizor. It perhaps may be
said that an actual sale on foreclosure is equivalent to an actual
re-entry, but however that may be, it has been decided in this
State that a mortgagee becoming the purchaser at a fore-
closure sale is legally entitled to crops *growing* at the time
as against the lessee of the mortgagor. (*Lane* v. *King*, 8
Wend., 584.)

It will be seen, however, that this doctrine proceeds upon
the ground that a mortgagor has no right to make a lease,
and if he made one, he was a wrong-doer. In *Keech* v. *Hall*
(Doug., 21) the mortgagee brought ejectment against a tenant
who claimed under a lease from the mortgagor given after
the mortgage without the privity of the mortgagee,
and Lord MANSFIELD, in giving judgment, said: "On
full consideration, we are all clearly of the opinion that
there is no inference of fraud or consent against the mort-
gagee to prevent him from considering the lessee of the mort-
gagor as a *wrong-doer*." And in the case of *Lane* v̇. *King*,
Mr. Justice SUTHERLAND put the case on the ground that "the
mortgagor has no power, express or implied, to let leases not
subject to every-circumstance of the mortgagee." It was held
in *McKircher* v. *Hawley* (16 Johns., 292) that the relation
subsisting between the mortgagor and mortgagee did not
imply a right on the part of the mortgagor to lease, and
Judge SUTHERLAND adds, in the case of *Lane* v. *King* (*supra*),
that "the mortgagor giving a lease becomes, as to the mort-
gagee, a disseizor." And following the judgment of Lord

Mansfield in *Keech* v. *Hall* (*supra*), Mr. Powell, in his elaborate treatise on mortgages (Powell on Mortgages, 213, 214, chap. 7), says that a mortgagor has no right to lease, and that the case of the lessee of a mortgagor as to emblements cannot be distinguished from that of any other tenant under a *tortious title*. It is not perceived, therefore, that the case of a mortgagee is any different in respect to the question here involved than the right of the owner of real estate unlawfully dispossessed, after he has regained possession, to maintain trespass.

In the present case the original entry by the defendants in the ejectment suit was lawful, and the defendant in the present action sowed and harvested the buckwheat by their permission during the continuance of that possession. Perhaps it may be said that as the judgment in ejectment determines this possession to have been unlawful, that no rights whatever as against the plaintiff could be acquired by them thereunder, and this is certainly plausible. But the difficulty appears to be that where the original entry was lawful, but was for some reason unlawfully continued, a recovery in ejectment has no such relation back as remits the plaintiff to his former seizin and possession, so that he can maintain an action for crops in the meantime sown, gathered and carried away. That right exists only where the original entry was unlawful. (*Morgan* v. *Varick*, 8 Wend., 590.) It can readily be conceived that an honest dispute may exist between parties, respecting the possession of land, resulting in a litigation of many years duration, and if, in the end, the plaintiff recovered the possession, I think it never has been suggested that by virtue of the recovery the plaintiff therefore became vested with the title to all the crops sown and gathered by the defendant during the litigation, so that trespass or replevin could be maintained. In such case, in ordinary actions of ejectment, the plaintiff must rely upon his remedy for *mesne profits*, which may be supposed to represent the value of the use and occupation by the defendant and of the crops sown and gathered by him during the period of

his unlawful possession, and this case, I think, comes within this rule. (*Stockwell* v. *Phelps*, 34 N. Y., 363.)

The case has been presented for our consideration upon the assumption that it appeared from the judgment record in the ejectment suit, that the recovery was had against the defendants therein for default in the payment of rent. It is apparent that no such fact appears upon the face of the record, and the argument entirely fails of support, and I find nothing in the case *dehors* the record in ejectment, which supports the plaintiff's re-entry, other than by force of a general judgment in ejectment in her favor. At common law, the landlord might re-enter for non-payment of rent, but it must be preceded by a strict demand of the rent, in the land, at the precise time at which it became payable, and at the common law this demand was necessary preparatory to bringing ejectment (Co. Litt., 201 *b*, 202 *a*), and it was for the purpose of avoiding "the many niceties which attend re-entries at common law," that the statute 4 George II, chapter 28 was passed, which was early re-enacted in this country, and continued in every subsequent revision of the laws. (2 J. & V., 238, § 23; 1 K. & R., 134, § 23; 1 Rev. Laws 1813, 440, § 23; 2 R. S., 505, § 30.) By these statutes, when a right of re-entry by the landlord exists, the service of a declaration in ejectment stands in the place and stead of a demand and re-entry, and to authorize the action, evidence is required that no sufficient distress could be found on the premises to satisfy the rent due. (*Jackson* v. *Collins*, 11 J. R., 1; *Van Rensselaer* v. *Jewett*, 5 Den., 121; *The Same* v. *Hayes*, 5 id., 477; *Same* v. *Jewett*, 2 N. Y., 141.) In 1846 (Laws of 1846, chap. 274), distress for rent was abolished and it was provided that if, after a notice of fifteen days, the tenant did not pay the rent, the landlord might re-enter; and it was held that this notice of fifteen days stood in the place of the evidence of a want of goods upon which to distrain. (*Van Rensselaer* v. *Snyder*, 13 N. Y., 299.)

In this case there is no pretence of any re-entry at common law, and if, under the statute referred to, there is no proof of a want of goods upon which to distrain, or of the fifteen days'

notice required by the third section of the act of 1846, and there is therefore no view in which the judgment in ejectment, so far as appears from the record, can be regarded as a re-entry by the plaintiff for the non-payment of rent.

Without considering some other minor questions appearing in the case, I am of opinion that the order granting a new trial should be affirmed, and judgment absolute ordered in favor of the defendant, with costs.

For reversal: LOTT, Ch. C., GRAY and DWIGHT, CC.; for affirmance: REYNOLDS and EARL, CC.

Order reversed and judgment ordered for plaintiff on verdict.